**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| LUCY, BENJAMIN, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN SKRMETTI, in his official capacity as the Attorney General and Reporter for the State of Tennessee, et al.,<br><br>Defendants. | Case No. 3:26-cv-00763 |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**

## INTRODUCTION

A class action lawsuit is appropriate to challenge Section 1 of House Bill 1704 (114th General Assembly) ("H.B. 1704"), which purports to give Tennessee state officials the unprecedented power to arrest, detain, and prosecute noncitizens in the State of Tennessee based on their immigration status. This law impermissibly creates Tennessee's own immigration crime, intrudes upon the federal government's exclusive authority over immigration, and obstructs Congress's scheme for enforcement of federal immigration laws. *See* Pls.' Mot. for Prelim. Inj., Dkt. No. 6.

Plaintiffs respectfully request that this Court provisionally certify a class of all noncitizens who are subject to Section 1 of H.B. 1704. This class satisfies the requirements of Rule 23(a) and falls squarely within Rule 23(b)(2). H.B. 1704 threatens thousands of noncitizens across Tennessee. The class raises the uniform legal question of whether the statute is preempted by federal immigration law. And Plaintiffs' claims are typical of all other class members, because they all face the same harms under the same preempted law. Plaintiffs' counsel—the ACLU Immigrants' Rights Project, the ACLU of Tennessee, and the National Immigration Law Center—have extensive experience in complex class litigation in the immigration law context.

Class certification is also appropriate under Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class," and a single injunction barring the enforcement of H.B. 1704 will redress the harm facing all class members. Fed. R. Civ. P. 23(b)(2).

H.B. 1704 will inflict grave harms on thousands of noncitizens and their families. It empowers Tennessee law enforcement to arrest, detain, and prosecute noncitizens for a preempted state immigration crime, even if the federal government has granted them certain forms of relief. Given the serious risk of irreparable harm should H.B. 1704 go into effect, Plaintiffs respectfully

request provisional class certification in tandem with the issuance of a temporary restraining order or preliminary injunction.[1]

## BACKGROUND

### I. Tennessee House Bill 1704

Section 1 of H.B. 1704 makes it a state crime for certain noncitizens with final removal orders to fail or refuse to depart Tennessee.

As relevant here, Section 1 makes it a crime for "an alien against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a)" to "intentionally fail[] or refuse[] to depart from" Tennessee within 90 days from the date of the final order of removal under administrative processes or judicial review. This crime is a Class A misdemeanor, which carries a maximum sentence of 11 months and 29 days in jail and a maximum fine of $2,500. Tenn. Code Ann. § 40-35-111(e)(1).

### II. Class Representatives

Plaintiffs are noncitizens who reside in Tennessee and face a credible threat of prosecution under H.B. 1704. Each named plaintiff seeks declaratory and injunctive relief to prevent the enforcement of H.B. 1704.

Lucy is a 58-year-old foreign national. *See* Decl. of Lucy ("Lucy Decl.") ¶ 2, Dkt. No. 6-1. She entered the United States in about 2000 on a visitor's visa. *Id.* ¶ 6. After she applied for asylum, her application was denied and she was issued a removal order. *Id.* ¶ 7. She has applied for relief under the Violence Against Women Act. *Id.* ¶ 9. For the past 25 years, she has lived in Memphis, Tennessee. *Id.* ¶ 11. Her entire life—her sons, including one United States citizen son

---

[1] Pursuant to Local Rule 7.01(a)(1), counsel conferred with counsel for Defendants, and Defendants oppose this motion.

who is starting college and who she financially supports, her job, where she has worked for 25 years, and her doctors and immigration lawyer—is in Tennessee. *Id.* ¶¶ 11-14. She does not intend to leave the state. *Id.* ¶ 14. She fears that she will be arrested, detained, and prosecuted under Section 1 because she has a final removal order and will fail to leave Tennessee. *Id.* ¶ 15.

Benjamin is a 35-year-old foreign national who entered the United States on a visitor's visa when he was a young child. *See* Decl. of Benjamin ("Benjamin Decl.") ¶¶ 2-3, Dkt. No. 6-2. His family applied for asylum, but their application was denied, and Benjamin received a final removal order when he was a teenager. *Id.* ¶ 5. Benjamin applied for and received Deferred Action for Childhood Arrivals ("DACA") and has renewed and maintained his DACA status ever since. *Id.* ¶ 6. Benjamin currently lives in Memphis and has lived there nearly his entire life. *Id.* ¶ 4. He is in an intensive career training program until 2027. *Id.* ¶ 7. Benjamin intends to continue living in Memphis and fears that he will be arrested, detained, and prosecuted under Section 1 because he has a final removal order and will fail to leave Tennessee. *Id.* ¶ 8.

Each of these plaintiffs faces imminent harm from H.B. 1704's enforcement and seeks injunctive relief on behalf of themselves and all others similarly situated. Their legal theories are uniform across the class: H.B. 1704 is preempted by federal immigration law and violates the Supremacy Clause of the U.S. Constitution. Their claims are typical of the class, and they are committed to pursuing this litigation to protect themselves and others facing the same injury.

## PROPOSED CLASS DEFINITION

The proposed class representatives, Lucy and Benjamin, seek certification of a Plaintiff Class defined as:

> All noncitizens who, now or in the future, are aliens against whom a valid final order of removal has been outstanding for 90 days or longer by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a), and who intentionally fail or refuse to depart from Tennessee.

## ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*.

As set forth below, the proposed class satisfies all four of the Rule 23(a) requirements. In addition, Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class," and therefore certification is appropriate under Rule 23(b)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Pickett v. City of Cleveland*, 140 F.4th 300, 309-10 (6th Cir. 2025).

### I. THE PROPOSED CLASS SATISFIES THE NUMEROSITY REQUIREMENT OF RULE 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A fixed number of plaintiffs is not required for numerosity, but courts routinely presume joinder is impracticable when the class exceeds forty individuals. *See Pickett*, 140 F.4th at 308 (citing 1 *Newberg and Rubenstein on Class Actions* § 3:12 (6th ed.)). The Court may also consider other factors relevant to the impracticability of joinder, including "judicial economy . . . , geographic [dispersion] of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* (internal citation and quotation marks omitted); *see also Kurczi v. Eli Lilly & Co.*,

160 F.R.D. 667, 672 (N.D. Ohio 1995) (noting that estimates are appropriate and that "plaintiffs are not required to make a specific showing of numbers at this point in the process").

Here, the proposed class includes noncitizens across Tennessee who are, or will be, subject to arrest and prosecution under H.B. 1704. Public data confirms that *thousands* of individuals could be exposed to arrest and prosecution pursuant to H.B. 1704's enforcement. According to a very recent Congressional Research Service report, there are approximately 1.6 million individuals with final orders of removal in the United States who are not detained. *See* William A. Kandel & Audrey Singer, Cong. Rsch. Serv., IF13208, Immigration and Customs Enforcement (ICE) and the Non-Detained Docket (NDD) 1 (2026), https://perma.cc/2N8F-6YJ3. The Migration Policy Institute estimates that out of 13.7 million unauthorized immigrants living in the United States, 186,000 (or 1.36%) live in Tennessee. *See* Migration Pol'y Inst., Unauthorized Immigrant Population Profiles, https://www.migrationpolicy.org/programs/us-immigration-policy-program-data-hub/unauthorized-immigrant-population-profiles (last visited May 21, 2026). Assuming that a similar proportion of non-detained individuals with final orders of removal live in Tennessee, this would mean that approximately 22,000 individuals with final orders of removal currently live in Tennessee, a substantial number of whom would be members of the proposed class.

Additionally, the class includes not just people who live in Tennessee who have a final order of removal, but also any such person who travels through or to the state. And there will be countless future members of the class given the ongoing application of H.B. 1704 to any person found in the state and suspected of past immigration violations, which supports a finding of numerosity. *See Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 696 (W.D. Ky. 2024) ("In some cases, the number of *potential* class members alone may be sufficient to demonstrate

numerosity." (emphasis added)), *amended on other grounds*, No. 3:17-CV-186-CHB, 2025 WL 964446 (W.D. Ky. Mar. 31, 2025).

Joinder is further complicated by the geographic dispersion of class members across Tennessee and the transitory nature of many individuals subject to H.B. 1704—who may also be incarcerated. Courts have recognized that joinder may be impracticable where plaintiffs are geographically dispersed. *See Savidge*, 727 F. Supp. 3d at 696. That is particularly true here, where class members are likely to face state prosecution and incarceration—limiting their ability to file individual suits or seek relief on their own. For these reasons, the proposed class satisfies Rule 23(a)(1)'s numerosity requirement. Indeed, in several challenges to laws similar to H.B. 1704, courts have found numerosity for the same reasons. *See Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1047 (D. Idaho 2025) (finding numerosity of class in challenge to law criminalizing presence in state after unlawful entry or reentry); *Padres Unidos de Tulsa v. Drummond*, 783 F. Supp. 3d 1324, 1351 (W.D. Okla. 2025) (same); *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1266 (S.D. Fla. 2025) (same).

## II. THE PROPOSED CLASS'S CLAIMS RAISE COMMON ISSUES OF LAW AND FACT.

The proposed class satisfies Rule 23(a)(2), which requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, plaintiffs must demonstrate "a common contention" that is "capable of classwide resolution." *Dukes*, 564 U.S. at 350. This requirement may be satisfied by "only one common question." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020) (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013)); 1 *Newberg and Rubenstein on Class Actions* § 3:21 (6th ed.).

Here, all class members face the same threatened harm: enforcement of H.B. 1704. They all raise the same preemption claims against the statute. And the statute threatens them with the same injuries of arrest, prosecution, and expulsion. These features of H.B. 1704 apply statewide and to each class member, creating multiple common questions of fact and law central to the litigation.

There are multiple common legal questions, including:

- Whether H.B. 1704 is field preempted because it regulates removal, a matter of dominant federal interest and a field over which Congress has exercised exclusive authority;
- Whether H.B. 1704 is conflict preempted because it wrests the broad discretion Congress entrusted to federal officials over removal decisions and gives it to the State of Tennessee, allows the state to unilaterally enforce immigration law, and conflicts with federal immigration law.

These defects in H.B. 1704 apply to every single class member.

The answer to whether the challenged conduct violates the law will drive the resolution of the litigation for the class as a whole. *Dukes*, 564 U.S. at 350. Because Plaintiffs' claims turn on issues common to all members of the proposed class, the commonality requirement is satisfied.

## III. THE NAMED PLAINTIFFS' CLAIMS ARE TYPICAL OF THE PROPOSED CLASS.

The proposed class also satisfies Rule 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is met when "the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice

and Procedure § 1764 (3d ed. 2005)). When this is true, "[t]ypicality is satisfied despite the different factual circumstances" between named plaintiffs and class members. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006).

Here, Plaintiffs' injuries and legal claims are the same as those of all other class members. Their claims arise from the same challenged conduct as the class they seek to represent: arrest and prosecution under H.B. 1704. Like all members of the proposed class, they face arrest and criminal charges. Like every class member, Plaintiffs' claims turn on whether H.B. 1704 is field and conflict preempted. The factual and legal basis for Plaintiffs' claims are thus coextensive with those of the proposed class. As the Sixth Circuit has made clear, "[t]ypicality is satisfied despite . . . different factual circumstances . . . [,]" *Daffin*, 458 F.3d at 553, such as the particulars of Plaintiffs' immigration statuses.

For these reasons, Plaintiffs' claims are typical of those of the class, and the proposed class satisfies Rule 23(a)(3).

## IV. THE REPRESENTATIVES ARE ADEQUATE.

The proposed class satisfies Rule 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The primary factors in evaluating adequacy are: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). As discussed below, there can be no question as to counsel's zeal and competence.

The proposed class representatives seek relief that would protect not only themselves but all persons subject to H.B. 1704. They understand their responsibilities as class representatives and have demonstrated a strong interest in vindicating the constitutional rights of others similarly situated. *See* Lucy Decl. ¶¶ 16-18; Benjamin Decl. ¶ 11. Neither of the representative Plaintiffs have interests antagonistic to the proposed class, and each is committed to pursuing prospective relief that would benefit all class members equally. *See In re Whirlpool*, 722 F.3d at 857 (finding named plaintiffs "will adequately represent" class members "despite differences in their [factual circumstances]"); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562-63 (6th Cir. 2007) (finding adequacy because "interests in this case, while of varying degrees, seem to all focus in the same direction[,]" "the interests of the named plaintiffs were not antagonistic to those of the class members[,]" and "there is no indication of a conflict of interest between the named plaintiffs and the class members" (internal quotations omitted)).

The fact that proposed class representatives seek to proceed pseudonymously does not affect their adequacy as class representatives. In a Rule 23(b)(2) class for injunctive relief, "the putative class members have no way to opt in or out of the class, and thus less need for information about class representatives." *Barbara v. Trump*, 790 F. Supp. 3d 80, 96 (D.N.H. 2025); *Doe v. U.S. Immig. & Customs Enf't*, No. 1:23-cv-00971, 2024 WL 4389461, at *4 (D.N.M. Oct. 3, 2024) (similar); *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 724 (D. Md. 2025) (rejecting Defendant's argument that pseudonymous representatives were inadequate because "the hallmark of a Rule 23(b)(2) class is that the relief benefits class representatives and class members alike"); *H.C.R. v. Mullin*, --- F. Supp. 3d ---, No. 25-cv-747, 2026 WL 850555, at *13 (M.D. Fla. Mar. 27, 2026)

(rejecting similar argument and citing cases), *appeal filed*, No. 26-11197 (11th Cir. 2026).[2] And several courts have provisionally certified Rule 23(b)(2) classes with pseudonymous class representatives in challenges to laws similar to H.B. 1704. *See, e.g.*, *Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1052; *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1235, 1254, 1270; *Padres Unidos de Tulsa*, 783 F. Supp. 3d at 1354. Here, "Plaintiffs have publicly filed detailed declarations" with information relevant to the claims, which "is arguably more informative and relevant to conflict analysis than Plaintiffs' actual names." *U.S. Navy SEALS 1-26 v. Austin*, 594 F. Supp. 3d 767, 782-83 (N.D. Tex. 2022).

## V. CLASS COUNSEL IS ADEQUATE UNDER RULE 23(g).

Under Federal Rule of Civil Procedure 23(g), any order certifying a class must appoint class counsel who will "fairly and adequately represent the interests of the class." In making this determination, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

Plaintiffs' counsel satisfy these criteria. Counsel have deep familiarity with complex federal litigation, including civil rights actions, preemption challenges, and class-based requests for injunctive and declaratory relief. Members of the litigation team are also litigating challenges to similar laws in other jurisdictions, including in Iowa, Florida, Idaho, Oklahoma, and Texas. *See,*

[2] Should the Court have concerns in this regard, the Court could devise a process to provide class members with confidential access to the representatives' identities subject to an appropriate protective order.

*e.g.*, *Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904 (8th Cir. 2025), *reh'g en banc denied*, 166 F.4th 688 (8th Cir. 2026); *Uthmeier v. Fla. Immigrant Coal.*, 145 S. Ct. 2872 (2025).

Counsel possess the experience and institutional resources necessary to effectively litigate this case through discovery, motion practice, classwide relief, and any future enforcement proceedings. The American Civil Liberties Union Foundation Immigrants' Rights Project, the American Civil Liberties Union of Tennessee, and the National Immigration Law Center are nationally recognized organizations with substantial expertise and capacity. Each has a proven track record of litigating large-scale constitutional and immigration-related challenges, including numerous class actions. No conflicts of interest exist, and proposed counsel have demonstrated a commitment to vigorously representing the interests of the entire class. *See* Decl. of Hannah Steinberg; Decl. of Efrén C. Olivares. The ACLU Immigrants' Rights Project has been previously appointed class counsel in multiple challenges to laws similar to H.B. 1704. *See Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1051; *Padres Unidos de Tulsa*, 783 F. Supp. 3d at 1353; *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1268; *L.M.L v. Martin*, No. 26-cv-1170, 2026 WL 1355237, at *27 (W.D. Tex. May 14, 2026), *stay granted* (5th Cir. May 29, 2026).

Under these circumstances, the appointment of Plaintiffs' counsel as class counsel is appropriate. Counsel "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court should therefore appoint the ACLU Immigrants' Rights Project, the ACLU of Tennessee, and the National Immigration Law Center as class counsel upon granting class certification.

## VI. THE PROPOSED CLASS SATISFIES RULE 23(b)(2).

Class certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class," such that "final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is specifically designed to permit "civil-rights actions" that seek uniform group remedies rather than individual damages. *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (citing Fed. R. Civ. P. 23 advisory committee's note to amendment 1966); *accord Dukes*, 564 U.S. at 360-61. A Rule 23(b)(2) class is particularly appropriate where plaintiffs seek broad injunctive or declaratory relief against discriminatory practices. *See Pickett*, 140 F.4th at 309-10 (upholding under Rule 23(b)(2) a class seeking an injunction and declaratory relief against a discriminatory city water lien policy).

This case exemplifies the purpose and structure of a Rule 23(b)(2) action. H.B. 1704 authorizes the arrest, detention, and prosecution of broad categories of noncitizens. The statute applies in the same way to all class members: It exposes them to the same threat of unconstitutional enforcement. And it violates the Supremacy Clause as to all of them in the same ways. Plaintiffs seek classwide injunctive and declaratory relief prohibiting this uniform, unlawful conduct.

Because they raise the same legal claims against the same statute, one injunction and declaration will remedy every class member's injuries in one fell swoop. *See Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy."). An injunction prohibiting Tennessee officials from enforcing Section 1 of H.B. 1704 would necessarily apply in the same manner to every class member. That is precisely the kind of relief Rule 23(b)(2) is designed to support.

Moreover, the efficiency and equity of class treatment weigh strongly in favor of certification. Many proposed class members are unlikely to file individual suits due to fear, limited resources, and language barriers. *See Savidge*, 727 F. Supp. 3d at 696. A classwide injunction is not only legally appropriate—it is practically necessary to safeguard access to the courts and

prevent inconsistent adjudications. *See Hiatt v. Cnty. of Adams, Ohio*, 155 F.R.D. 605, 608 (S.D. Ohio 1994) ("[T]he requirements of [Rule 23] should be liberally construed in the context of civil rights suits.") (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

Because Plaintiffs challenge state conduct that applies broadly and uniformly to all members of the class, and because they seek declaratory and injunctive relief that would redress the classwide harm, Rule 23(b)(2) is satisfied.[3]

## VII. PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE.

"[P]laintiffs who challenge the legality of" governmental "action and request preliminary injunctive relief may sometimes seek to proceed by class action under [Rule] 23(b)(2) and ask a court to award preliminary classwide relief that may, for example, be statewide . . ." *Trump v. CASA, Inc.,* 606 U.S. 831, 869 (2025) (Kavanaugh, J., concurring). Indeed, "[c]ourts routinely grant provisional class certification for purposes of entering injunctive relief." *Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1046-47 (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) and *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 (9th Cir. 2020)); *see also Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 812 (D.C. Cir. 2024) (noting provisional certification). And courts have provisionally certified classes in several cases challenging laws similar to H.B. 1704. *See L.M.L*, 2026 WL 1355237, at *25; *Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1052; *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1270; *Padres Unidos de Tulsa*, 783 F. Supp. 3d at 1354. Where the application of Rule 23 is straightforward, the certification process

[3] The Sixth Circuit Court of Appeals has held "that ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Cole*, 839 F.3d at 542. In any event, the proposed class is ascertainable because it is "defined by classic categories of objective criteria" and is therefore "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538-39 (6th Cir. 2012); *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 524-26 (6th Cir. 2015).

can appropriately "proceed quickly." David Marcus, *The Class Action After Trump v. Casa*, 72 UCLA L. Rev. Discourse 2, 18 (2025) (addressing arguments against provisional certification).[4]

## CONCLUSION

The Court should grant class certification.

---

[4] Because "the certification of a class is always provisional" until final judgment, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016), the term "provisional" is formally "redundant." *See* Marcus, *supra* at 20. Courts typically label class certification granted alongside preliminary relief "provisional" to indicate openness to revising class issues later in litigation if warranted. *See id*. at 20-21.

Dated: June 4, 2026

/s/ *Lucas Cameron-Vaughn*
Lucas Cameron-Vaughn (BPR# 036284)
Zee Scout (BPR# 042637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, Tennessee 37212
Tel: (615) 320-7260
lucas@aclu-tn.org
zscout@aclu-tn.org

Hannah Steinberg*
Cody Wofsy*
Oscar Sarabia Roman*
Spencer Amdur*
American Civil Liberties Union
Foundation Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
hsteinberg@aclu.org
cwofsy@aclu.org
osarabia@aclu.org
samdur@aclu.org

Noor Zafar*
Grace Choi*
Omar Jadwat*
American Civil Liberties Union
Foundation Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
nzafar@aclu.org
gchoi@aclu.org
ojadwat@aclu.org

Peter McGraw*
Efrén Olivares*
Kevin Siegel*
National Immigration Law Center
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
mcgraw@nilc.org
olivares@nilc.org
siegel@nilc.org

*Attorneys for Plaintiffs*
**Pro hac vice application forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, I electronically filed the foregoing with the Clerk of Court by using the District Court CM/ECF system. I have also caused a copy to be emailed to the following attorneys with the Tennessee Attorney General's Office: Miranda Jones (Miranda.Jones@ag.tn.gov); David Wickenheiser (David.Wickenheiser@ag.tn.gov); Jessica Berk (Jessica.Berk@ag.tn.gov).

/s/ *Lucas Cameron-Vaughn*____________
Lucas Cameron-Vaughn