# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| LUCY, BENJAMIN, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:26-cv-763 |
| JONATHAN SKRMETTI, *et al.*, | ) ) | Judge Richardson |
| | ) | Magistrate Judge Frensley |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND ..............................................................................................................................3

    I.    Federal and State Framework for Removal Order Compliance......................................3

        A.  Federal Immigration Law........................................................................................3

        B.  State Participation in Immigration Enforcement ....................................................4

        C.  Tennessee Law........................................................................................................5

    II.   Parties and Posture.........................................................................................................5

REASONS FOR DENYING INJUNCTIVE RELIEF......................................................................6

    I.    Plaintiffs Are Unlikely to Establish Jurisdiction. .........................................................7

        A.  Plaintiffs lack standing. ..........................................................................................7

            1.   Plaintiffs have not shown an injury-in-fact.............................................8

            2.   Plaintiffs have not alleged General Skrmetti caused any injury. ...........12

        B.  Defendants have sovereign immunity. ..................................................................13

    II.   Plaintiffs Are Unlikely to Succeed on the Merits.......................................................14

            1.   There is no field preemption...................................................................16

            2.   There is no conflict preemption. .............................................................22

    III.  The Other Equitable Factors Weigh Against Extraordinary Injunctive Relief.........25

    IV.  Any Grant of Preliminary Relief Should Be Limited in Scope...................................27

        A.  Any injunction should be limited in scope. ..........................................................27

        B.  The Court should not enter class-wide relief. .......................................................28

CONCLUSION...............................................................................................................................31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine,*
527 U.S. 706 (1999)................................................................................................................13

*Am. Apparel & Footwear Ass'n, Inc. v. Baden,*
107 F.4th 934 (9th Cir. 2024) .........................................................................................23, 24

*Anderson v. Edwards,*
514 U.S. 143 (1995)...............................................................................................................16

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) .................................................................................................21

*Arizona v. United States,*
567 U.S. 387 (2012)........................................................................................................*passim*

*Ayotte v. Planned Parenthood,*
546 U.S. 320 (2006)...............................................................................................................27

*Bittner v. United States,*
598 U.S. 85 (2023)..................................................................................................................19

*Book People, Inc. v. Wong,*
91 F.4th 318 (5th Cir. 2024) .................................................................................................14

*Brockett v. Spokane Arcades, Inc.,*
472 U.S. 491 (1985)...............................................................................................................28

*Bucklew v. Precythe,*
587 U.S. 119 (2019)...............................................................................................................15

*California Coastal Comm'n v. Granite Rock Co.,*
480 U.S. 572 (1987)........................................................................................................16, 25

*California v. Zook,*
336 U.S. 725 (1949)...............................................................................................................23

*Children's Healthcare is a Legal Duty, Inc. v. Deters,*
92 F.3d 1412 (6th Cir. 1996)................................................................................................14

*Chiles v. Salazar,*
146 S. Ct. 1010 (2026) ..........................................................................................................12

ii

*Christian Healthcare Centers, Inc. v. Nessel,*
  117 F.4th 826 (6th Cir. 2024) ........................................................................ 2, 11, 12

*Cipollone v. Liggett Grp., Inc.,*
  505 U.S. 504 (1992) ........................................................................................... 19

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................................................................. 26

*Cleveland Branch, N.A.A.C.P. v. City of Parma,*
  263 F.3d 513 (6th Cir. 2001) ............................................................................. 11

*Commonwealth v. Biden,*
  57 F.4th 545 (6th Cir. 2023) ............................................................................. 27

*Cunningham v. Sisk,*
  136 F. App'x 771 (6th Cir. 2005) ...................................................................... 26

*D.T. v. Sumner Cnty. Sch.,*
  942 F.3d 324 (6th Cir. 2019) ............................................................................. 26

*Dayton Power & Light Co. v. FERC,*
  126 F.4th 1107 (6th Cir. 2025) ........................................................... 16, 17, 22, 23

*De Canas v. Bica,*
  424 U.S. 351 (1976) ........................................................................................... 19

*Doe v. Lee,*
  137 F.4th 569 (6th Cir. 2025) ............................................................................. 7

*Doran v. Salem Inn, Inc.,*
  422 U.S. 922 (1975) ........................................................................................... 28

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) ............................................................................... 3

*EMW Women's Surgical Ctr. v. Beshear,*
  920 F.3d 421 (6th Cir. 2019) ............................................................................. 14

*Enchant Christmas Light Maze & Mkt. v. Glowco, LLC,*
  958 F.3d 532 (6th Cir. 2020) ........................................................................... 2, 6

*EOG Res., Inc. v. Lucky Land Mgmt., LLC,*
  134 F.4th 868 (6th Cir. 2025) .......................................................................... 7, 25

*Farmer v. Phillips,*
  No. 20-5730, 2021 WL 6210609 (6th Cir. Oct. 19, 2021) ................................. 14

iii

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ............................................................................... 8, 17, 20

*Fenner v. Gen. Motors, LLC*,
113 F.4th 585 (6th Cir. 2024) .............................................................15, 22, 23, 25

*Fla. Immigrant Coal. v. Att'y Gen.*,
No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) ................................22

*Fla. Immigrant Coal. v. Uthmeier*,
780 F. Supp. 3d 1235 (S.D. Fla. 2025) ..............................................................22

*Fong Yue Ting v. United States*,
149 U.S. 698 (1893) ..........................................................................................21

*Fox v. Saginaw Cnty., Michigan*,
67 F.4th 284 (6th Cir. 2023) ....................................................................... 12, 29

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) ..........................................................................................19

*Friends of George's, Inc. v. Mulroy*,
108 F.4th 431 (6th Cir. 2024) ...........................................................1, 8, 11, 23

*Friendship Materials, Inc. v. Mich. Brick, Inc.*,
679 F.2d 100 (6th Cir. 1982) ..............................................................................7

*Georgia Latino All. for Hum. Rts. v. Governor of Georgia*,
691 F.3d 1250 (11th Cir. 2012) .........................................................................22

*Glenn v. Holder*,
690 F.3d 417 (6th Cir. 2012) .............................................................................27

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ..........................................................................................15

*Hans v. Louisiana*,
134 U.S. 1 (1890) ..............................................................................................13

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ............................................................................................20

*Idaho Org. of Res. Councils v. Labrador*,
780 F. Supp. 3d 1013 (D. Idaho 2025).............................................................22

*Johnson v. City of Shelby*,
574 U.S. 10 (2014)...............................................................................................9

*Kansas v. Garcia,*
    589 U.S. 191 (2020)......................................................................................................................*passim*

*Keller v. City of Fremont,*
    719 F.3d 931 (8th Cir. 2013)........................................................................................................21

*Kiser v. Reitz,*
    765 F.3d 601 (6th Cir. 2014)........................................................................................................11

*L. W. v. Skrmetti,*
    83 F.4th 460 (6th Cir. 2023) ..................................................................................................*passim*

*Lozano v. City of Hazleton,*
    724 F.3d 297 (3d Cir. 2013)........................................................................................................22

*Mattera v. Baffert,*
    100 F.4th 734 (6th Cir. 2024) .....................................................................................................25

*McHenry Cnty. v. Kwame Raoul,*
    44 F.4th 581 (7th Cir. 2022) ................................................................................................ 17, 18

*McKay v. Federspiel,*
    823 F.3d 862 (6th Cir. 2016)................................................................................................ 10, 11

*Memphis A. Philip Randolph Inst. v. Hargett,*
    2 F.4th 548 (6th Cir. 2021)............................................................................................................7

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024) .....................................................................................................14

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024)....................................................................................................................15

*Murthy v. Missouri,*
    603 U.S. 43 (2024)........................................................................................................................8

*Nken v. Holder,*
    556 U.S. 418 (2009)....................................................................................................................26

*Norton Outdoor Advert., Inc. v. Vill. of St. Bernard,*
    Ohio, 99 F.4th 840 (6th Cir. 2024) .............................................................................................15

*Oneok, Inc. v. Learjet, Inc.,*
    575 U.S. 373 (2015)....................................................................................................................16

*Online Merchs. Guild v. Cameron,*
    995 F.3d 540 (6th Cir. 2021)................................................................................................ 10, 11

v

*Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*,
461 U.S. 190 (1983)..................................................................................................16

*Padres Unidos de Tulsa v. Drummond*,
785 F. Supp. 3d 993 (W.D. Okla. 2025) ...................................................................22

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*,
769 F.3d 447 (6th Cir. 2014)......................................................................................22

*Plyler v. Doe*,
457 U.S. 202 (1982)....................................................................................................19

*Puckett v. Lexington-Fayette Urban Cty. Gov't*,
833 F.3d 590 (6th Cir. 2016)......................................................................................13

*Ream v. United States Dep't of The Treasury*,
174 F.4th 480 (6th Cir. 2026) ....................................................................................12

*Riegel v. Medtronic, Inc.*,
552 U.S. 312 (2008)....................................................................................................23

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) ..............................................................................7, 14

*Sharpe v. Cureton*,
319 F.3d 259 (6th Cir. 2003)......................................................................................29

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)..................................................................................................7, 8

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) ......................................................................................30

*Torres v. Precision Indus., Inc.*,
995 F.3d 485 (6th Cir. 2021)..................................................................16, 17, 19, 25

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)..........................................................................................2, 26, 27, 28

*Trump v. Hawaii*,
585 U.S. 667 (2018) .....................................................................................................8

*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) .................................................................................22

*United States v. Armstrong*,
517 U.S. 456 (1996)....................................................................................................27

*United States v. Bahlouli,*
790 F. Supp. 3d 559 (W.D. Tex. 2025) ...................................................................................10

*United States v. Chinchilla,*
987 F.3d 1303 (2021) ................................................................................................................4

*United States v. Grace,*
461 U.S. 171 (1983).................................................................................................................28

*United States v. Miami Univ.,*
294 F.3d 797 (6th Cir. 2002)...................................................................................................27

*United States v. Palomar-Santiago,*
593 U.S. 321 (2021).................................................................................................................10

*United States v. Texas,*
144 F.4th 632, 723-24 (5th Cir. 2025) ...................................................................................17

*Universal Life Church Monastery Storehouse v. Nabors,*
35 F.4th 1021(6th Cir. 2022) ......................................................................................11, 12, 13

*Va. Uranium, Inc. v. Warren,*
587 U.S. 761, 767 (2019) .........................................................................................................25

*Vonderhaar v. Vill. of Evendale, Ohio,*
906 F.3d 397 (6th Cir. 2018)...................................................................................................27

*Waskul v. Washtenaw Cty. Cmty. Mental Health,*
900 F.3d 250 (6th Cir. 2018).....................................................................................................8

*Williams v. City of Cleveland,*
907 F.3d 924 (6th Cir. 2018)...................................................................................................29

*Ex parte Young,*
209 U.S. 123 (1908).............................................................................................................13, 14

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC,*
134 F.4th 326 (5th Cir. 2025) ....................................................................................21, 23, 24

**Statutes, Rules, and Regulations**

6 U.S.C. § 101 ...........................................................................................................................3

6 U.S.C. § 202 ...........................................................................................................................3

6 U.S.C. § 251 ...........................................................................................................................3

6 U.S.C. § 252 ...........................................................................................................................3

6 U.S.C. § 557 ...........................................................................................................................3

8 U.S.C. § 1101 ....................................................................................................................3

8 U.S.C. § 1103 ................................................................................................................5, 17

8 U.S.C. §  1227 ..........................................................................................................*passim*

8 U.S.C. § 1229a .......................................................................................................... 3, 9, 19

8 U.S.C. § 1229b ................................................................................................................10

8 U.S.C. § 1231 .................................................................................................... 3, 4, 5, 17

8 U.S.C. § 1252 ...............................................................................................................3, 19

8 U.S.C. § 1252c ...............................................................................................................5, 17

8 U.S.C. § 1253 ..........................................................................................................*passim*

8 U.S.C. § 1324 ........................................................................................................ 1, 17, 18

8 U.S.C. § 1324a .................................................................................................................18

8 U.S.C. § 1326 .................................................................................................................21

8 U.S.C. § 1329 .................................................................................................................18

8 U.S.C. § 1357 .....................................................................................................................5

18 U.S.C. § 1028 .................................................................................................................18

18 U.S.C. § 1546 .................................................................................................................18

Pub. L. No. 104-208, § 320(d)(2), 110 Stat. 3009 (1996)....................................................3

Fed. R. Civ. P. 23 .................................................................................................................28

Fed. R. Civ. P. 65(c) ............................................................................................................30

Tenn. Code Ann. § 1-3-110 ...............................................................................................27

Tenn. Code Ann. § 8-6-112 ...............................................................................................13

Tenn. Code Ann. § 8-6-303 ...............................................................................................13

Tenn. Code Ann. § 8-7-103 ........................................................................................ 12, 13

Tenn. Code Ann. § 16-10-101 ...........................................................................................13

Tenn. Code Ann. § 16-11-102 ...........................................................................................13

Case 3:26-cv-00763     Document 25     Filed 06/15/26     Page 9 of 42 PageID #: 260

Tenn. Code Ann. § 20-13-102.............................................................................................................14

Tenn. Code Ann. § 29-21-101.............................................................................................................12

Tenn. Code Ann. § 40-30-114.............................................................................................................12

2026 Tenn. Pub. Acts, ch. 771 § 1..................................................................................................*passim*

Tenn. R. Civ. P. 1...............................................................................................................................13

**Other Authorities**

Erwin Chemerinsky, *Empowering States: The Need to Limit Federal Preemption*, 33 Pepp.
    L. Rev. 69 (2005) .........................................................................................................................16

Case 3:26-cv-00763     Document 25     Filed 06/15/26     Page 10 of 42 PageID #: 261

## INTRODUCTION

"From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). And it remains true even with respect to state law enforcement touching on immigration. *Id.* Using that authority, Tennessee recently enacted the Removal-Order Compliance Act ("ROCA" or "the Act"). ROCA targets individuals who are knowingly violating federal law, and those who are intentionally evading federal immigration enforcement supervision. It narrowly applies to immigrants who intentionally stay in Tennessee over 90 days after receiving a final removal order from the federal government. 2026 Tenn. Pub. Acts, ch. 771 § 1. That conduct is already illegal under federal law. *See* 8 U.S.C. § 1253(a).

Two Plaintiffs sued Tennessee officials before ROCA's effective date seeking emergency relief, claiming the statute is preempted. They purport to sue on behalf of a putative class so they can obtain statewide relief.

Plaintiffs' challenge fails across the board. As Plaintiffs themselves acknowledge, Tennessee and federal law are essentially identical. Dkt. 6 at 19. That cannot be the basis for the global, facial invalidation that Plaintiffs seek. Plaintiffs do not come close to a "*clear showing*" that they are likely to prevail on the merits. *L. W. v. Skrmetti*, 83 F.4th 460, 471 (6th Cir. 2023), *aff'd sub nom. United States v. Skrmetti*, 605 U.S. 495 (2025).

Plaintiffs lack pre-enforcement standing to bring this suit: They have not shown that they are violating the law, and they cannot show a "certainly impending" prosecution. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (citation omitted). ROCA applies *only* to "an alien against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a)." 2026 Tenn. Pub. Acts, ch. 771 § 1(a)(1). But Plaintiffs have not alleged that they are "member[s] of any of the classes described in 8 U.S.C. § 1227(a)." *Id.* That

1

forecloses the "extraordinary and drastic remedy" of a preliminary injunction. *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (citation omitted).

Beyond that, there is no credible threat of enforcement. ROCA has no history of past enforcement, no warning letters have been issued, the law has no attributes that make enforcement easier, and before this lawsuit was brought, Defendants did not refuse to disavow enforcement. On that last point, Plaintiffs made no attempt to ask for Defendant's position on their particular factual circumstances before launching a sprawling putative class action. The Sixth Circuit has been clear that it "is indeed unrealistic to expect a defendant to disavow a law's enforcement as applied to 'fluid and future facts' that are unclear at this time." *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 850 (6th Cir. 2024) (citation omitted). Given the bare-bones factual allegations, Defendants do not know enough about Plaintiffs conduct to make a determination regarding a disavowal. Plaintiffs' lawsuit arises from a theoretical future Tennessee prosecution, not one that is *certainly* impending. Article III prohibits adjudicating such hypothetical claims.

Even if this Court were to reach the merits, ROCA is not facially preempted. The whole field of immigration is not preempted, only the narrow field of alien registration. Indeed, federal law affirmatively invites State participation in many enforcement related fields. Plaintiffs' facial conflict preemption challenge is also far afield. ROCA is essentially identical to federal law, and "[t]he mere fact that state laws . . . overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption." *Garcia*, 589 U.S. at 211.

Finally, Plaintiffs seek overbroad relief, circumventing the Supreme Court's recent landmark decision in *Trump v. CASA, Inc.*, 606 U.S. 831, 861-62 (2025). This Court has no basis for granting emergency relief, much less a sweeping preliminary injunction going beyond the parties. Plaintiffs' motion should be denied.

2

I.      **Federal and State Framework for Removal Order Compliance.**

        A.      **Federal Immigration Law**

The Immigration and Nationality Act ("INA") and its many subsequent amendments set out the federal government's structure for civil and criminal regulation of immigrants. Under that structure, federal immigration judges adjudicate whether a noncitizen is removable. 8 U.S.C. § 1229a. For an Immigration Judge ("IJ") to make that decision, the federal government[1] must establish that the immigrant falls within one of the deportable classes enumerated in 8 U.S.C. § 1227 (e.g., criminal offenses, certain visa violations, unlawful presence). *Id.* § 1229a(a)(2). After adjudicating an immigrant removal, an IJ issues an order of removal and must inform the immigrant of the right to appeal and the consequences of failing to depart. *Id.* § 1229a(c)(5). The order becomes a final administrative order upon affirmation by the federal agency or upon waiver or expiration of the right to appeal. *Id.* § 1101(a)(47)(B) (defining "order of deportation"); *see* Pub. L. No. 104-208, § 320(d)(2), 110 Stat. 3009 (1996) ("For purposes of carrying out the Immigration and Nationality Act . . . any reference in law to an order of removal shall be deemed to include a reference to . . . an order of deportation."). Federal courts of appeals have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(b)(2).

Once a removal order is final, the federal government must physically remove the immigrant within 90 days—the statutory "removal period." *Id.* § 1231(a)(1)(A). The removal period begins on the latest of: (i) the date the order becomes administratively final; (ii) if the order is stayed pending judicial review, the date of the court's final order; or (iii) the date of the immigrant's release from any non-immigration confinement. *Id.* § 1231(a)(1)(B). The removal period may be extended beyond 90

---

[1] These statutes generally refer to actions by the Attorney General or "the Service," which is defined as the "Immigration and Naturalization Service." 8 U.S.C. § 1101(a)(24). However, Congress transferred enforcement of immigration laws from the Attorney General and the Service to the Department of Homeland Security ("DHS"). 6 U.S.C. §§ 101(16), 202(3), 251-252, 557; *Elgharib v. Napolitano,* 600 F.3d 597, 606-07 (6th Cir. 2010).

days if the immigrant fails to obtain travel documents or acts to prevent removal. *Id.* § 1231(a)(1)(C).

When removal cannot be accomplished within the 90-day removal period, the immigrant "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). This supervision is memorialized in a Form I-220B, the Order of Supervision, which requires the immigrant to comply with various supervisory requirements including, for some, cooperation with ICE's alternatives to detention program ("ATD"). *See* Order of Supervision, ICE, https://perma.cc/9PW8-QJSJ (last accessed July 12, 2026). An Order of Supervision does not change immigration status—the immigrant remains unlawfully present and subject to the outstanding final removal order. *United States v. Chinchilla*, 987 F.3d 1303, 1305 (2021). But it does allow the immigrant's release into the United States for an indefinite period, potentially years, so long as the immigrant complies with the order's conditions. *Id.* When an immigrant subject to a final order of removal willfully refuses to comply, the government may pursue criminal charges. 8 U.S.C. § 1253(a).

As Plaintiffs have mentioned, "approximately 1.6 million individuals with final orders of removal live in the United States who are not detained." Dkt. 8 at 5 (citing William A. Kandel & Audrey Singer, Cong. Rsch. Serv., IF13208, *Immigration and Customs Enforcement (ICE) and the Non-Detained Docket (NDD)* ("*ICE & NDD*") 1 (2026), https://perma.cc/2N8F-6YJ3). There is little information available about the number of immigrants currently subject to Orders of Supervision, but the federal government estimates that "180,000 individuals are on ATD," suggesting only a fraction of immigrants with final orders are actively cooperating with the federal government. *See ICE & NDD* at 1.

### B. State Participation in Immigration Enforcement

Federal law invites state participation in the removal process on several fronts. The federal government may enter into a written agreement with a State or political subdivision authorizing qualified state or local officers to perform functions of a federal immigration officer—including the

4

investigation, apprehension, or detention of immigrants. 8 U.S.C. §§ 1103(c), 1357(g). After obtaining confirmation from immigration authorities, state and local law enforcement officials are independently authorized to arrest and detain immigrants illegally present in the United States until the federal government takes custody for purposes of removal if those immigrants have previously been convicted of a felony and deported or left the country. *Id.* § 1252c. The federal government may not remove immigrants in state custody without the State's consent. *Id.* § 1231(a)(4). And it will compensate States for certain costs related to incarcerating immigrants. *Id.* § 1231(i)(3)(B)(iii). States may even sue the federal government for injunctive relief if the federal government does not comply with certain immigrant-removal obligations. *Id.* §§ 1231(a)(2)(B), 1253(e).

### C. Tennessee Law

On April 21, 2026, the Governor signed the Removal Order Compliance Act into law. 2026 Tenn. Pub. Acts, ch. 771 § 1. The Act prohibits immigrants with outstanding, valid, and final removal orders who are members of the classes in 8 U.S.C. § 1227(a) from intentionally failing or refusing to depart from Tennessee within 90 days of their removal orders becoming final. *Id.*

As Plaintiffs admit, Dkt. 6 at 19, ROCA closely tracks a federal law that prohibits immigrants with outstanding, valid, final removal orders who are members of the classes in 8 U.S.C. § 1227(a) from willfully failing or refusing to depart from the United States within 90 days of their removal orders becoming final. 8 U.S.C. § 1253(a)(1)(A). ROCA takes effect on July 1, 2026. 2026 Tenn. Pub. Acts, ch. 771 § 1.

### II. Parties and Posture.

Over a month after ROCA became law and mere weeks before it takes effect, two Plaintiffs sued. Dkt. 1. First is Lucy, a citizen of a foreign nation who has lived in Memphis for the past 25 years. *Id.* ¶ 8. She alleges that a final removal order was issued against her. *Id.* She also reports that she is working to obtain cancellation of removal under the Violence Against Women Act and that she checks

5

in with federal immigration officers every month in Memphis and has never missed a check-in. *Id.*; Dkt. 6-1 ¶¶ 8-9. Second is Benjamin, also a citizen of a foreign nation who has lived in Memphis "for decades." Dkt. 1 ¶ 9. He likewise alleges that a final removal order was issued against him. *Id.* And he reports that he checked in with federal immigration officials as soon as he turned 19, that he applied for the Deferred Action for Childhood Arrivals program when he was 22, that he was granted DACA when he was 23 and has renewed it ever since, and that he is currently in an intensive training program for a federal license. Dkt. 6-2 ¶¶ 5-6. They bring this facial constitutional challenge for themselves and on behalf of a putative class of all others who are similarly situated. Dkt. 1 ¶ 51-58.

Plaintiffs sued Jonathan Skrmetti, the Attorney General of Tennessee; Jeff Long, the Commissioner of the Tennessee Department of Safety and Homeland Security; and twelve District Attorneys—all in their official capacities. Dkt. 1 ¶¶ 10-23. The Complaint alleges that federal law preempts ROCA. Dkt. 1 ¶¶ 59-62. Plaintiffs have also moved to enjoin Defendants "and their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them" from enforcing ROCA against anyone. Dkt. 6 at 22. The proposed preliminary injunction seeks facial relief that goes even beyond the putative class, seeking to enjoin "enforcement of Section 1"—full stop. Dkt. 6 at 22.

Plaintiffs served Defendants on June 5, 2026. The Court then ordered Defendants to submit this response by June 15, 2026, and to address the scope of Plaintiffs' request for class-wide injunctive relief. Dkt. 11. For the reasons that follow, Plaintiffs fail to show entitlement to any injunction, and certainly not a class-wide facial injunction.

## REASONS FOR DENYING INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary and drastic remedy." *Enchant Christmas*, 958 F.3d at 539 (citation omitted). It "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Id.* at 539. Plaintiffs must establish *all four* factors: (1) they are likely to succeed

6

in establishing jurisdiction and win on the merits; (2) they will suffer irreparable harm; (3) the balance of equities favors them; and (4) an injunction is in the public interest. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021); *see EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025). Even then, the court retains discretion to deny or limit relief. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). Courts must "guard" injunctive relief "with extreme caution, and apply it only in very clear cases." *Doe v. Lee*, 137 F.4th 569, 575 (6th Cir. 2025) (cleaned up, citation omitted).

Here, Plaintiffs have not carried their burden at any step of the analysis. Justiciability problems abound. Plaintiffs lack pre-enforcement standing because they have not alleged that ROCA applies to them, nor have they alleged that Plaintiffs face a credible threat of enforcement. Under binding Sixth Circuit precedent, General Skrmetti is not a proper defendant. And all Defendants are entitled to sovereign immunity.

Plaintiffs also are unlikely to succeed on the merits. The Supreme Court recently rejected their overbroad theory of field preemption. *See Garcia*, 589 U.S. at 191. And their claim of facial conflict preemption, at most, identifies a possibility of scattered tensions. But Plaintiffs' hypothetical, isolated conflicts fall well short of the facial standard to obtain the wholesale invalidation of ROCA that they demand.

## I.     Plaintiffs Are Unlikely to Establish Jurisdiction.

Both standing and sovereign immunity limit a court's jurisdiction. Plaintiffs have the burden to demonstrate standing and to overcome the sovereign immunity of the official-capacity Defendants. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046-47 (6th Cir. 2015). They satisfy neither burden.

### A.     Plaintiffs lack standing.

To establish standing, Plaintiffs "must satisfy the usual standards for injury in fact, causation,

and redressability." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024). At "the preliminary injunction stage, then, the plaintiff must make a 'clear showing'" on each element. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citation omitted). Because "standing is not dispensed in gross," each plaintiff must demonstrate standing "for each claim he seeks to press" and "for each form of relief sought." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 253 (6th Cir. 2018) (citations omitted). No such "clear showing" has been made here. *Murthy*, 603 U.S. at 58.

### 1. Plaintiffs have not shown an injury-in-fact.

"Typically[,] the government [must] enforce the allegedly unconstitutional law against the challenging party before it has standing to sue." *Friends of George's*, 108 F.4th at 435. But in limited circumstances, an Article III injury can be established *before* enforcement. Plaintiffs can establish an injury sufficient for "*pre*-enforcement review" only when "the plaintiff (1) alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) that the challenged statute proscribes, and (3) the plaintiff's intention generates a *certainly impending* threat of prosecution." *Id.* (cleaned up, citation omitted). Plaintiffs fail this test because (a) their allegations do not show that ROCA proscribes their conduct, and (b) Plaintiffs cannot make a clear showing of a "certainly impending" threat of prosecution. *Id.*; *Driehaus*, 573 U.S. at 158.

### a. Plaintiffs fail to establish that they are engaging in conduct that ROCA proscribes.

The first step is to "figure out what the [law] proscribes." *Friends of George's*, 108 F.4th at 435 (citation omitted). The Act has four requirements: (1) "a person who is eighteen (18) years of age or older commits an offense" if (2) the person "[i]s an alien[2] against whom a valid final order of removal is outstanding" (3) "by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a),"

---

[2] Defendants use the terms "alien" and "illegal alien" here because these are the terms in federal and state law. *See Trump v. Hawaii*, 585 U.S. 667, 747 (2018) (Sotomayor, J., dissenting).

8

and (4) the person "intentionally fails or refuses to depart from this state within a period of ninety (90) days from the date of the final order of removal." 2026 Tenn. Pub. Acts, ch. 771 § 1(a).

Plaintiffs generally allege that they have final orders of removal, Dkt. 1 ¶¶ 8-9; Dkt. 6-1 ¶ 10; Dkt. 6-2 ¶ 8, but include almost no specifics about those orders or their basis. Those material omissions defeat Plaintiffs' request for extraordinary relief.

Qualifying Individual. Plaintiffs do not allege or declare that they are "a member of any of the classes described in 8 U.S.C. § 1227(a)." 2026 Tenn. Pub. Acts, ch. 771 § 1(a). This omission matters because 8 U.S.C. § 1227(a) *does not cover all* immigrants with final orders of removal. *See, e.g.,* 8 U.S.C. § 1229a(a)(2). To put it in Plaintiffs' own words, 8 U.S.C. § 1227(a) "describes noncitizens 'in and admitted to the United States' who fall within various 'classes of deportable [noncitizens].'" Dkt. 6 at 6 n.4 (quoting 8 U.S.C. § 1227(a)). If Plaintiffs do not fall within one of the classes in § 1227(a), then the Act does not apply to them. And they fail to establish—or even allege—into which class in § 1227(a) they might fall.

Plaintiffs silence on this front is telling. They tie their class certification request to "being a member of any of the classes described in 8 U.S.C. § 1227(a)," Dkt. 7 at 3, so Plaintiffs are aware that an immigrant must fall within § 1227(a) to violate ROCA. Yet there is no allegation or declaration stating into which class Plaintiffs fall. That is no mere pleading defect. *Contra Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). It is Plaintiffs' burden to make a "clear showing" of entitlement to preliminary relief. *L.W*, 83 F.4th at 471. Plaintiffs cannot be clearly entitled when they do not even allege that they fall within § 1227(a).

Qualifying Orders. Plaintiffs likewise do not allege or declare that the orders against them are either "valid" or "outstanding" as ROCA requires. Dkt. 1 ¶¶ 8-9; Dkt. 6-1 ¶ 10; Dkt. 6-2 ¶ 8. Again, these omissions matter. The "substantive validity of [a] removal order" is a "distinct" question from its finality with significant impact on an immigrant's status in civil and criminal proceedings. *See, e.g.,*

9

*United States v. Palomar-Santiago*, 593 U.S. 321, 327 (2021). And many actions by both the federal government and immigrants themselves can remove the "outstanding" status of a final order of removal. *See, e.g.*, *United States v. Bahlouli*, 790 F. Supp. 3d 559, 564 (W.D. Tex. 2025) (finding it unclear whether a removal order was outstanding because an immigration judge withheld removal). But Plaintiffs say nothing at all about the validity of the orders against them or whether those orders are outstanding. Indeed, Lucy is actively seeking cancellation of her order. *See* Dkt. 6-1 ¶ 9; 8 U.S.C. § 1229b(b)(2)(A)(i)(I).

Overstaying Order. Plaintiffs further do not allege that they have stayed 90 days beyond the date they were ordered to leave the country. ROCA applies to those who "refuse[] to depart" from Tennessee "within a period of ninety (90) days from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court." *Id.* § 1(a)(2). Plaintiffs generally state that they have final orders of removal. Dkt. 1 ¶¶ 8-9; Dkt. 6-1 ¶ 10; Dkt. 6-2 ¶ 8. But they do not allege or declare the date on which their orders became final or that they have stayed 90 days past that date.

Plaintiffs failed to attach their final orders of removal or plead the necessary allegations, that if true, would show they fall with ROCA's ambit. Although Plaintiffs might amend their complaint, or prove up the necessary facts through discovery, at this early juncture, Plaintiffs have not made "a clear showing" that they are covered by ROCA. *L.W.*, 83 F.4th at 471.

> **b.      Plaintiffs do not face a "certainly impending" threat of prosecution.**

Even if the Act did "proscribe[] [Plaintiffs'] intended conduct," courts do not assume that every breach of the law will be prosecuted. *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016). Instead, the Sixth Circuit assesses whether a certain threat of enforcement exists through a four-part framework—the "*McKay* factors." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021), *abrogated on other grounds by Tennessee Conf. NAACP v. Lee*, 139 F.4th 557, 563 (6th Cir. 2025). The *McKay*

10

factors require "some combination" of (1) "a history of past enforcement," (2) "enforcement warning letters sent to the plaintiffs," (3) "an attribute of the challenged statute that makes enforcement easier or more likely," and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.* (quoting *McKay*, 823 F.3d at 869). Plaintiffs have none.

Plaintiffs have not, and cannot, show the first three *McKay* factors. "A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past," *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014), but Plaintiffs sued before ROCA went into effect, so no past enforcement was possible, *see Friends of George's*, 108 F.4th at 439. No warning letters have been sent. *See id.* And ROCA is "a standard criminal law with no attributes making enforcement easier or more likely." *Id.* at 440.

Nor is there "refusal to disavow enforcement of the challenged statute against" Plaintiffs. *Online Merchs.*, 995 F.3d at 550 (cleaned up) (focusing on "a particular plaintiff"). Plaintiffs say that Defendants failed to disavow enforcement before this lawsuit was filed. Dkt. 6 at 8. But they do not show that anyone ever *asked* Defendants before this lawsuit about how they will enforce ROCA against these Plaintiffs and their specific circumstances. And it is foundational that standing is determined when a lawsuit is filed and not impacted by post-lawsuit developments. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001); *cf. Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 1034-35 (6th Cir. 2022) (noting that *before* litigation defendants refused to disavow prosecution).

Regardless, even looking post-filing, it is "unrealistic to expect a defendant to disavow a law's enforcement as applied to 'fluid and future facts' that are unclear at this time." *Christian Healthcare*, 117 F.4th at 850 (citation omitted). Plaintiffs appear to allege that they are law-abiding immigrants who are cooperating with the federal government regarding their immigration status. Dkt. 6-1 ¶¶ 8-9; Dkt. 6-2 ¶¶ 6-7. Given these allegations, Plaintiffs may very well not ever face prosecution under ROCA.

Defendants cannot make a decision "in the abstract" without yet knowing even the identities of Plaintiffs,[3] let alone the scope and nature of their cooperation with the federal government. *Christian Healthcare*, 117 F.4th at 854 (citation omitted). In other words, this is not a circumstance in which Defendants, faced with a concrete set of facts, refuse to disavow enforcement. *Cf. Chiles v. Salazar*, 146 S. Ct. 1010, 1019 n.* (2026) (finding standing after the defendants "expressly declined to disavow enforcement"); *Ream v. United States Dep't of The Treasury*, 174 F.4th 480, 485 (6th Cir. 2026) (same). Rather, they cannot determine their position on enforcement without a full factual investigation. That position "does not suggest a credible threat of enforcement." *Christian Healthcare*, 117 F.4th at 854. Because Plaintiffs fail to show an imminent threat of prosecution, they lack standing to bring this federal lawsuit. *Id.*

### 2. Plaintiffs have not alleged General Skrmetti caused any injury.

Plaintiffs' alleged injury cannot be traced to or redressed by General Skrmetti. "[A] plaintiff's standing to sue one defendant does not give the plaintiff standing to sue every other defendant." *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 293 (6th Cir. 2023). Plaintiffs must allege how an injunction against "*each* of the defendants could redress" their injuries. *Universal Life Church*, 35 F.4th at 1031. This is true even for putative class actions. *Fox*, 67 F.4th at 294-300. Thus, Plaintiffs must show what General Skrmetti "has done, is doing, or might do to injure" him. *Universal Life Church*, 35 F.4th at 1031. They cannot.

The Tennessee Attorney General does not have general prosecutorial authority. District Attorneys prosecute "all violations of the state criminal statutes." Tenn. Code Ann. § 8-7-103. The Attorney General handles appeals from their prosecutions and directs trial proceedings in certain quasi-criminal post-conviction matters. Tenn. Code Ann. §§ 29-21-101, 40-30-114(c). But those duties

---

[3] Even after Defendants stipulated to a temporary protective order that, in turn, required Plaintiffs to disclose their identity, Dkt. 24 ¶ 4, Plaintiffs still have yet to provide their identities to Defendants.

do not "requir[e] the attorney general and reporter to approve of, participate in, or supervise actions instituted by the various district attorneys." Tenn. Code Ann. § 8-6-303. The Attorney General may only "conduct an investigation" and "initiate [a] criminal prosecution" when a judicial official or District Attorney may have violated a state criminal law and either (A) the local District Attorney has a conflict or (B) the violation is of Tennessee's nepotism law. Tenn. Code Ann. § 8-6-112(a). Because "there is no imminent prosecution that a federal court could coerce the Attorney General to refrain from undertaking," the Sixth Circuit has held that the Attorney General is *not* a proper party for actions like this one. *Universal Life Church*, 35 F.4th at 1032.

Plaintiffs think that General Skrmetti is a proper defendant because he defends the constitutionality of state law and handles criminal appeals. Dkt. 1 ¶ 10. That is not enough to establish causation for purposes of standing. *Universal Life Church*, 35 F.4th at 1032. Plaintiffs also misunderstand Tennessee law. They say Tenn. Code Ann. § 8-7-103(3) allows the Attorney General to ask district attorneys for help bringing cases in "circuit and chancery courts." Dkt. 1 ¶ 10. But chancery courts have exclusively civil jurisdiction, and circuit courts have dual *civil* and criminal jurisdiction. Tenn. Code Ann. §§ 16-10-101, 16-11-102; Tenn. R. Civ. P. 1. The cited statute gives the Attorney General power to ask for assistance in *civil* cases. The statute does not endow General Skrmetti with the power to enforce criminal laws generally, much less to enforce ROCA. "As a result, no plaintiff has standing to sue [the] Attorney General." *Universal Life Church*, 35 F.4th at 1032.

### B.    Defendants have sovereign immunity.

Sovereign immunity protects Defendants from this suit. *Alden v. Maine*, 527 U.S. 706, 715 (1999); *Hans v. Louisiana*, 134 U.S. 1, 14–15 (1890). There are three exceptions to sovereign immunity: (1) "when the state has consented to suit," (2) "when Congress has clearly and expressly abrogated the state's immunity," or (3) "when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None apply.

13

Tennessee has not consented to this suit. *See* Tenn. Code Ann. § 20-13-102(a); *Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *2 (6th Cir. Oct. 19, 2021). Nor has Congress clearly and expressly abrogated the State's immunity. Thus, this suit can proceed only if the *Ex Parte Young* exception applies. *Russell*, 784 F.3d at 1046-47. It does not.

Under *Ex parte Young*, a "suit challenging the constitutionality of a state official's action is not one against the State." *Id.* (citation omitted). That exception "has been read narrowly." *EMW Women's Surgical Ctr. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019). To successfully invoke it, "a claim must seek prospective relief to end a continuing violation of federal law." *Id. Ex parte Young* "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). In other words, *Ex parte Young* "require[s] . . . action on the part of the state official." *Id.* at 1416.

As discussed above, *supra* Part I.A.1.b, there are no allegations that any Defendant has "enforced []or threatened to enforce" ROCA against *anyone*, *Deters*, 92 F.3d at 1415. That forbids deploying *Ex parte Young* to get around sovereign immunity. *Id.*; *Russell*, 784 F.3d at 1046-47.

To preserve the argument for a potential appeal, Defendants also respectfully submit that, while the Sixth Circuit treats standing and *Ex parte Young* as coextensive, *Russell*, 784 F.3d at 1047, the Fifth Circuit correctly requires at least a "scintilla of enforcement" to satisfy *Ex parte Young* even where Article III standing is shown. *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024); *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024). Plaintiffs, lacking standing, certainly lack a scintilla of enforcement.

## II.      Plaintiffs Are Unlikely to Succeed on the Merits.

Because this Court lacks subject matter jurisdiction, it should not reach the merits. But even on the merits, Plaintiffs are unlikely to succeed on their facial preemption claim.

14

Even if ROCA applied to Plaintiffs, and it does not, Plaintiff's suit still cannot succeed because the INA does not preempt ROCA. Plaintiffs' central argument is that federal-immigration law conflict- and field-preempts ROCA on its face because the federal government alone can make decisions about enforcement of immigration removal laws. Dkt. 1 ¶¶ 61-62.[4] But "facial challenges [are] hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The legal theory put forward in the complaint and injunction motion has been rejected by the Supreme Court and is foreclosed by basic elements of preemption doctrine. Plaintiffs fail to even mention controlling Supreme Court precedent on immigration preemption. *See Garcia*, 589 U.S. 191. They instead rely on out-of-date, out-of-circuit cases that do not account for *Garcia*.

The Supremacy Clause allows Congress to "impose its will on the States" by enacting federal laws that preempt state laws. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). But Congress's power to legislate in areas "traditionally regulated by the States" is so "extraordinary" that courts "must assume Congress does not exercise [it] lightly." *Id.* When federal law intrudes into areas traditionally regulated by states, courts presume that, absent "unmistakably clear language" to the contrary, there is no preemption. *Id.* (citation omitted). Criminal law is chief among these areas. "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Garcia*, 589 U.S. at 212. Because criminal law is a "field which the States have traditionally occupied" the "presumption against preemption 'operates with special force.'" *Fenner v.*

---

[4] Plaintiffs argue that the Act is unconstitutional and Defendants should be enjoined from enforcing it against anyone, Dkt. 6 at 22, which tracks the Supreme Court's definition of a facial challenge as "really just a claim that the law or policy at issue is unconstitutional in all its applications," *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). The facial nature of their claim is also obvious in the relief they seek in the Complaint: a declaration that the entire Act is "unlawful" and an injunction preventing Defendants from enforcing the Act against anyone. Dkt. 1 at 26 ¶ c. So, their claim is facial. *Norton Outdoor Advert., Inc. v. Vill. of St. Bernard*, Ohio, 99 F.4th 840, 846 n.2 (6th Cir. 2024).

*Gen. Motors, LLC*, 113 F.4th 585, 596 (6th Cir. 2024) (quoting *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015)); *see Torres v. Precision Indus., Inc.*, 995 F.3d 485, 491 (6th Cir. 2021).

Plus, Plaintiffs bear the additional burden of winning a facial challenge. They must show that *every* "possible" application of ROCA is preempted. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987); *L.W.*, 83 F.4th at 489 (collecting cases). If Tennessee identifies even *one possible* application "not in conflict with federal law," Plaintiffs lose. *California Coastal Comm'n*, 480 U.S. at 593; *see Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995). Plaintiffs do not come close to that standard.

### 1. There is no field preemption.

Field preemption is "rare." *Garcia*, 589 U.S. at 208. It occurs only when Congress has "left no room for supplementary state legislation." *Id.* (quotation omitted); *see Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 384-85 (2015). That only happens when the "federal interest" is "so dominant" that Congress sought to preclude all State participation—as in this context of immigration *registration* or nuclear safety. *See Arizona v. United States*, 567 U.S. at 399 (citation omitted); *Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190 (1983).[5]

Thus, to show field preemption, Plaintiffs must point to something in the "text or structure" of federal laws addressing removal of immigrants that establishes that Congress "left no room for supplementary state legislation." *Garcia*, 589 U.S. at 208 (citation omitted). They cannot do so, because federal law waives the federal government's sovereign immunity and affirmatively *invites* State participation in this area. Indeed, federal law "teem[s] with references to state involvement." *Dayton*

---

[5] It is not clear that field preemption should exist at all. *See, e.g.*, *Garcia*, 589 U.S. at 214 n.* (Thomas, J., concurring) ("I am also skeptical of field pre-emption . . . ."); Erwin Chemerinsky, *Empowering States: The Need to Limit Federal Preemption*, 33 Pepp. L. Rev. 69, 74-75 (2005) ("With regard to preemption, I think there should be only two situations when there is preemption of state law. One is express preemption. The other is when federal law and state law are mutually exclusive, so it is not possible for somebody to comply with both."). So, a court should hesitate to adopt a sweeping conception of the field preemption doctrine.

*Power & Light Co. v. FERC*, 126 F.4th 1107, 1129 (6th Cir. 2025); *see Torres*, 995 F.3d at 491-92 (similar). That forecloses the field preemption claim.

*First*, federal law authorizes States to sue the federal government for "appropriate injunctive relief" (1) if the federal government fails to detain an immigrant during an immigrant's removal period as required by federal law, 8 U.S.C. § 1231(a)(2)(B), and (2) if the federal government fails to discontinue granting visas to countries that delay accepting removable immigrants and an immigrant from one of those countries harms the State or its residents, 8 U.S.C. § 1253(e). It prohibits the federal government from "removing" an immigrant from the United States who is "sentenced to imprisonment" and serving time under state law to before completion of the state sentence unless the "chief State official" submits a request for the immigrant's removal. *Id.* § 1231(a)(4). It provides for States to be compensated when they incarcerate an immigrant who was the subject of deportation proceedings when taken into custody. *Id.* § 1231(i)(3)(B)(iii). It even contemplates States (1) arresting and detaining previously deported immigrants who are illegally present in the United States, *id.* § 1252c, and (2) entering into "cooperative agreements" with the federal government to "assist[] in the enforcement of the immigration laws," *Id.* § 1103(c). Courts do not find field preemption where there has been an analogous invitation for State participation. *Dayton Power*, 126 F.4th at 1129; *see United States v. Texas*, 144 F.4th 632, 723-24 (5th Cir. 2025) (Oldham, J., dissenting) (collecting cases), *vacated en banc by* 173 F.4th 659.

The invitation for cooperative enforcement of *all* immigration laws carries extra significance because of the discretion it imparts. *Id.* § 1103(c). There is "no support in the text of the federal statutes" for field preemption when federal law authorizes the federal government to "enter into a *cooperative agreement*" because this "contemplates discretionary and voluntary choices by States." *McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 589 (7th Cir. 2022) (citation omitted). And a "provision that allows for policy decisions by States and localities as to the extent of their participation is about

17

180 degrees away from a command, let alone one that leaves 'no room for supplementary state legislation.'" *Id.* (citation omitted).

*Second*, setting aside express invitation, the standard for showing that the "text or structure" of federal law "bar[s] all state regulation" is extremely high and is not satisfied here. *Garcia*, 589 U.S. at 210. Comparing this case with *Garcia* shows as much. In *Garcia*, the Court examined whether a state law prohibiting "identity theft" was unconstitutional as applied to "illegal aliens" due to implied field preemption. *Id.* at 195, 208. The federal law there prohibited hiring an immigrant knowing they were unauthorized to work in the United States, 8 U.S.C. § 1324a(a)(1)(A), (h)(3); entering false information in federal I-9 forms, 18 U.S.C. §§ 1028, 1546; or using I-9 forms for improper purposes, 8 U.S.C. § 1324a(b)(5). It also listed civil and criminal punishments for violations. 8 U.S.C. § 1324a(e)(4), (f)(1). It listed exceptions. *Id.* §1324a(b)(6). It spelled out that the federal officials have the duty to bring civil or criminal actions to enforce the law. *Id.* § 1324a(e)(1)(D), (f)(2). It specified which judicial entities have jurisdiction: administrative law judges and federal district and appellate courts. *Id.* § 1324a(e)(2)-(9), (f)(2). Federal law even expressly preempted any efforts by States to sanction employers who employ unauthorized immigrants. *Id.* § 1324a(h)(2). Despite all that, *Garcia* found no field preemption because the detailed federal regulation still lacked the "comprehensive *and unified* system" needed to oust State regulation. 589 U.S.at 210 (emphasis added).

The federal law here is like the law in *Garcia*. The law prohibits specific behavior: failing or refusing to depart from the United States within a period of 90 days from the date of the final order of removal. 8 U.S.C. § 1253(a)(1)(A). It lists punishments for violations. *Id.* § 1253(a)(1). It lists exceptions. *Id.* § 1253(a)(2). It provides that United States Attorneys are responsible for bringing actions to enforce the law. *Id.* § 1329. And it specifies that federal district courts have jurisdiction. *Id.* With such a similar law, courts should reach the same conclusion that federal law "plainly does not foreclose all state regulation" in this area. *Garcia*, 589 U.S. at 209.

18

*Third*, it is unlikely that Congress intended to field preempt removal when it expressly preempted only the *civil* parts of that process. Supreme Court precedent "supports an inference that [an] express pre-emption clause forecloses implied pre-emption." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-89 (1995). Congress has expressly stated that the procedures in Chapter 12 of Title 8 are the "sole and exclusive procedure for determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3). And the procedures in 8 U.S.C. § 1252 are the "sole and exclusive means for judicial review of an order of removal entered or issued under" Chapter 12 of Title 8. 8 U.S.C. § 1252(a)(5), (e). "These statutes "impl[y] that matters beyond that reach are not pre-empted." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992). After all, "[w]hen Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023); *see Cipollone*, 505 U.S. at 517 (applying a similar principle to preemption); *Torres*, 995 F.3d at 491 (same). Those Congressional choices of statutory design should preclude field preemption.

Plaintiffs push back, but their counterarguments are unavailing.

*First*, contrary to Plaintiffs' contention that removal must be field preempted due to the general federal interest in immigrants, Dkt. 6 at 9-10, the Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *De Canas v. Bica*, 424 U.S. 351, 355 (1976), *superseded on other grounds by statute as stated in Garcia*, 589 U.S. at 195; *see Torres*, 995 F.3d at 491. Just the opposite, the Court has recognized that "States do have some authority to act with respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal." *Plyler v. Doe*, 457 U.S. 202, 225 (1982).

*Arizona v. United States* is in accord. 567 U.S. 387, 416 (2012). There, the federal government challenged four Arizona laws that both facilitated policing of and criminalized actions related to "illegal immigration." *Id.* In an exacting analysis, the Court found field preemption only for Arizona's law

19

impacting immigrant registration, not its other laws. *Id.* at 401-09. If Congress had occupied the general field of "immigration," then the Court would have deemed all state laws touching on the topic preempted. It did not. Indeed, as part of its obstacle preemption analysis, the Court listed various circumstances in which federal law *invites* state participation in the *removal* process, indicating immigration removal is not field preempted. *Id.* at 408-9. *Arizona* thus shows the federal government occupies the limited field of "alien registration," *Garcia*, 589 U.S. at 210, and does *not* occupy removal.

*Second*, Plaintiffs are wrong that penalties for failure to depart *after* a final order of removal require a single sovereign. Dkt. 6 at 9-10. Although the United States is built on the dual sovereignty of federal and state governments, there are certain areas of law where a "single sovereign" is required to ensure "unified" treatment of the legal issue. *Arizona v. United States*, 567 U.S. at 401; *Hines v. Davidowitz*, 312 U.S. 52, 65-66 (1941). Immigrant registration is one of those "important and delicate" areas because it "has to do with the protection of the just rights of a country's own nationals when those nationals are in another country." *Hines*, 312 U.S. at 64. If multiple sovereigns are allowed to weigh in on an immigrant's registration, discriminatory treatment could result, which might upset foreign nations, jeopardizing "the welfare and tranquility of *all* the states, and not merely . . . of one." *Id.* at 66 (emphasis added). Or, simply put, mishandling of immigration registration could "lead[] to war." *Id.* at 64. This is why only one sovereign, "the national government," can be allowed to control immigrant registration. *Id.* at 66.

The conduct ROCA proscribes is different. In arguing that the federal interest in removal falls into this single-sovereign category, Dkt. 6 at 9-10, Plaintiffs overlook that the federal interest extends to deciding whether an immigrant is removable—but no further once that decision is made. Tennessee does not usurp the federal government's authority to determine whether an immigrant is lawfully in the United States. The Act *relies exclusively on federal determinations* about an immigrant's legal status and whether that immigrant should be removed from the United States. 2026 Tenn. Pub. Acts, ch. 771 §

1(a)(1). And it requires state courts to suspend proceedings if an immigrant has not exhausted all available paths under federal law for challenging the final order of removal. *Id.* § 1(c). Thus, ROCA, like employee documentation, is not one of those "rare" areas where Congress has decided the federal government alone may tread. *Garcia*, 589 U.S. at 208; *Keller v. City of Fremont*, 719 F.3d 931, 943 (8th Cir. 2013). On the contrary, the federal government, with its "limited resources," would likely "welcome[ Tennessee's] aid in enforcing shared legal norms." *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 334 (5th Cir. 2025).

*Third*, Plaintiffs overread the reach of federal immigration law and overlook the narrowness of ROCA. Plaintiffs identify only two federal statutes addressing the criminal regulation of immigrants with final removal orders, and they make no effort to explain how those two statutes field preempt state laws that build on federal immigration determinations. Dkt. 6 at 11 (citing 8 U.S.C. §§ 1253, 1326). Plaintiffs instead, at a high level of generality, point to all the ways that Congress has defined the federal framework "governing removal of noncitizens." Dkt. 6 at 10-11. But, as they concede, the statutes they cite are procedures for "determining *whether* a noncitizen may be removed." *Id.* at 10 (emphasis added). ROCA does not touch this determination process. Instead, it regulates federally unlawful conduct occurring *after* the federal determination. 2026 Tenn. Pub. Acts, ch. 771 § 1. Plaintiffs point out that federal laws define how immigrants can seek relief from final removal orders, and there too, ROCA does not intrude but requires state courts to "stay" criminal proceedings to let immigrants exhaust "all available paths under federal law." 2026 Tenn. Pub. Acts, ch. 771 § 1(c). Thus, the purportedly comprehensive federal framework focuses on the procedure for issuance of a final, valid order of removal, not the *post*-removal order criminal activity that ROCA targets.

*Fourth*, Plaintiffs (at 9-14) largely point to decisions that *do not* conclude immigration removal is field preempted. *See Fong Yue Ting v. United States*, 149 U.S. 698 (1893) (finding for the United States in a challenge that Chinese immigrants brought to federal law with no mention of preemption); *Arizona*

*v. Biden*, 40 F.4th 375, 386-87 (6th Cir. 2022) (finding a federal immigration guidance did "not purport to preempt any state or local law, whether criminal or otherwise"); *Lozano v. City of Hazleton*, 724 F.3d 297, 315 (3d Cir. 2013) (finding housing, not removal, provisions are field preempted); *United States v. Alabama*, 691 F.3d 1269, 1282, 1285 (11th Cir. 2012) (finding the federal government occupies the discrete fields of "alien registration" and immigrant transportation, concealment, and inducement); *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1265 (11th Cir. 2012) (finding the federal government occupies the field of "unlawful transport and movement of aliens"); *Padres Unidos de Tulsa v. Drummond*, 785 F. Supp. 3d 993, 1006 (W.D. Okla. 2025) (finding the federal government occupies the field of "noncitizen entry and reentry"); *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1042 (D. Idaho 2025) (same); *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1260 (S.D. Fla. 2025) (same). The one decision that comes close to removal did "not definitively resolve the preemption issue" but found, in the context of a motion to stay an injunction pending appeal, that the defendant had not made a "strong showing" of a likelihood of success on the merits of his defense. *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025). The exact opposite burden exists here. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 769 F.3d 447, 453 (6th Cir. 2014).

At bare minimum, Plaintiffs seek to "extend the constitutional guarantees" of the Supremacy Clause "to new territory"—a new field—which "is not something federal courts should do lightly." *L. W.*, 83 F.4th at 471.

### 2. There is no conflict preemption.

It is a textbook rule that "[t]he mere fact that state laws . . . overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption." *Garcia*, 589 U.S. at 211. That is why the Sixth Circuit requires "a 'high threshold'" to succeed in a conflict preemption claim. *Dayton Power*, 126 F.4th at 1128 (citation omitted); *Fenner*, 113 F.4th at 594. A "state law is

'conflict' preempted *only* 'to the extent it *actually conflicts* with federal law, that is, . . . the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" *Fenner,* 113 F.4th at 594 (citation omitted) (emphasis added).

On top of the high threshold for conflict preemption, the presumption against preemption, and the heavy burden of proving a facial challenge, Plaintiffs face an additional barrier—this is a pre-enforcement challenge to a state law. "Without the benefit of a definitive interpretation from . . . state courts, it would be inappropriate to assume [a new state law] will be construed in a way that creates a conflict with federal law." *Arizona v. United States*, 567 U.S. at 415. The Sixth Circuit routinely denies such challenges when only *one* of these components is present. *L. W.*, 83 F.4th at 489 (denying a facial challenge); *Friends of George's*, 108 F.4th at 435 (denying a pre-enforcement challenge); *Fenner*, 113 F.4th at 598 (denying a consumer-protection preemption challenge). Taken together, Plaintiffs lose if it is *possible* to interpret ROCA in even one way that does not conflict with federal law.

Under that standard, Plaintiffs' facial challenge never leaves the starting gate. Plaintiffs concede, Dkt. 6 at 19, that ROCA closely tracks the part of federal law that prohibits immigrants with outstanding, valid, final removal orders who are members of the classes in 8 U.S.C. § 1227(a) from willfully failing or refusing to depart from the United States within 90 days of their removal orders becoming final. 8 U.S.C. § 1253(a)(1)(A). That acknowledgment dooms their facial challenge, which again, requires Plaintiffs to prove that the state law conflicts with federal law in *every* application. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 944 (9th Cir. 2024). After all, mere overlap with federal law does not state a claim for conflict preemption. *Garcia*, 589 U.S. at 211; *California v. Zook*, 336 U.S. 725, 733 (1949); *see Fenner*, 113 F.4th at 594; *Zyla Life Scis.*, 134 F.4th at 335.

In fact, in most applications of ROCA there would be no conflict with federal law—there would be harmony. There is no obstacle preemption "when the state laws further Congress's overall goal." *Dayton Power*, 126 F.4th at 1128. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008). ROCA

23

permits enforcement of a state law crime that parallels a federal law crime only if the federal government has already decided a person should be removed from the United States. This reservation of discretion to the federal government and mirroring of the federal crime "recognizes the supremacy of the national law" by "conform[ing] to it," creating coordination *not* conflict. *Zyla Life Scis.*, 134 F.4th at 332 (citation omitted). No conflict means no preemption. And, if there is even one application without conflict, the law is facially valid. *Am. Apparel*, 107 F.4th at 944.

ROCA stands in stark contrast to the statute in *Arizona*, which allowed state officers to arrest immigrants believed to have committed removable offenses. *Arizona v. United States*, 567 U.S. at 409. The Court found the statute obstacle preempted because it authorized state officers to decide "whether it is appropriate to allow a foreign national to continue living in the United States." *Id.* ROCA, however, does not allow Tennessee officials to decide when a person is removable from the United States. That power is reserved to the discretion of federal actors. 2026 Tenn. Pub. Acts, ch. 771 § 1(a)(1). ROCA does not allow Tennessee officials to decide the validity of a final order. That power too is reserved to the federal government. *Id.* at §1(c). Thus, the obstacle preemption of *Arizona* is absent.

The real thrust of Plaintiffs' argument is their attempt to find isolated conflicts based on (1) the general discretion of federal immigration officials and (2) Tennessee's alleged "unilateral" exercise enforcement authority. Dkt. 6 at 15-19. These arguments are two sides of the same coin suggesting there *may* be conflict *if* Tennessee unilaterally acts to enforce ROCA against immigrants like Plaintiffs whom federal officials have exercised their discretion not to prosecute for violating federal law. That theory fails as a matter of law and does not come close to showing facial invalidity.

*First*, Plaintiffs talismanically invoke federal discretion, but as the Supreme Court has made plain, the "possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Garcia*, 589 U.S. at 212. That is why "[i]nvoking some brooding federal interest

24

or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion). After all preemption is not a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Garcia*, 589 U.S. at 202. Yet that is exactly what Plaintiffs ask this Court to do.

*Second*, at most, Plaintiffs identify a potential for tension if ROCA is enforced against the subset of individuals who remain in the United States under federal supervision even after receiving a final order of removal. *See ICE & NDD* at 1. Those isolated conflicts are not enough for the facial invalidation that Plaintiffs seek, which requires showing that *every* "possible" application of ROCA is preempted. *California Coastal Comm'n*, *480* U.S. at 593; *see L.W.*, 83 F.4th at 489. Again, there is no conflict at all when ROCA is applied to more than one million individuals who have a valid final order of removal and are likely not under active federal supervision. *See* Background Part I.A.

Plaintiffs are the "master of their own Complaint." *Mattera v. Baffert*, 100 F.4th 734, 739 (6th Cir. 2024). And they chose to bring an exclusively facial challenge. Dkt. 1 ¶¶ 59-62. Because there are instances when ROCA can be applied without obstructing federal prerogatives, they are unlikely to succeed on the merits.

If this Court were to grant unrequested, as-applied relief based on the alleged isolated conflicts between ROCA and Plaintiffs' circumstances, that ruling should be limited to Plaintiffs' circumstances: individuals who are allegedly cooperating with active federal supervision. After all it is textbook law that "state law is 'conflict' preempted *only* 'to the extent it *actually conflicts* with federal law." Congress.'" *Fenner,* 113 F.4th at 594 (citation omitted) (emphasis added); *see Torres*, 995 F.3d at 495 (noting a successful preemption plaintiff's remedy must be limited to actual conflicts).

## III. The Other Equitable Factors Weigh Against Extraordinary Injunctive Relief.

Plaintiffs' lack of likely jurisdictional or merits success suffices to foreclose relief. *EOG Res., Inc.*, 134 F.4th at 883. But each of the remaining preliminary-injunction factors likewise counsel

25

granting preliminary injunctive relief to Plaintiffs.

Lack of Irreparable Harm. "To merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted). But, the irreparable injury requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The harm in this case is pure speculation. Plaintiffs moved to enjoin enforcement of a new law before it even went into effect and certainly before anyone threatened to apply it to them. They have provided no evidence that any Tennessee official—let alone Defendants— agrees with their claim the Act applies to them and plans to use it against them. They say only that they are afraid or worried they might be arrested and prosecuted. Dkt. 1 ¶¶ 8-9; Dkt. 6-1 ¶ 10; Dkt. 6-2 ¶ 8. "[F]ear" of a "hypothetical threat of prosecution is not an 'immediate,' 'irreparable' injury that warrants the 'extraordinary remedy' of a preliminary injunction." *D.T.*, 942 F.3d at 327 (citation omitted). Thus, with "fear" alone as their harm, Plaintiffs "cannot" show irreparable injury. *Lyons*, 461 U.S. at 107 n.8, 111.

Weight of Equities. In official-capacity lawsuits, the remaining factors for injunctive relief merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, denying preliminary injunctive relief is in the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *CASA*, 606 U.S. at 861-62 (citation omitted).

Plaintiffs argue public interest requires an injunction because they believe there is a significant risk of arrest, racial profiling, and eroding public trust. Dkt. 6 at 21. But at each point, their claims are groundless. The accusation of racial profiling is unfounded and, thus, an inappropriate basis for an injunction. *Cunningham v. Sisk*, 136 F. App'x 771, 775 (6th Cir. 2005) (noting the "'strong presumption' in selective enforcement cases 'that the state actors have properly discharged their official duties"

26

without racial discrimination). No "clear evidence" overcomes the presumption of regularity here. *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *cf. Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (noting a generalized fear of wrongful prosecution cannot support standing). And public trust would be equally eroded if an advisory injunction prevented Defendants from enforcing a law that does not apply to Plaintiffs, nor is there a credible threat of enforcement. *See Vonderhaar v. Vill. of Evendale, Ohio*, 906 F.3d 397, 399 (6th Cir. 2018) ("Advisory opinions are 'ghosts that slay.'" (citation omitted)).

**IV.     Any Grant of Preliminary Relief Should Be Limited in Scope.**

Plaintiffs fail each preliminary-injunction factor and should not receive any relief. But, if an injunction issues, "it should be no broader than necessary to remedy the harm at issue." *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002); *CASA*, 606 U.S. at 861-62.

**A.     Any injunction should be limited in scope.**

Any injunctive relief must be limited to the unconstitutional applications of ROCA and to the parties before the Court. It is well established that courts generally "enjoin only the unconstitutional applications of a statute" or "sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329 (2006). Indeed, Tennessee law expressly embraces that principle. Tenn. Code Ann. § 1-3-110. It is likewise well established that any injunction must be party-specific. An injunction that extends beyond the parties exceeds Article III's limits on judicial power. *See L. W.*, 83 F.4th at 490; *Commonwealth v. Biden*, 57 F.4th 545, 556-57 (6th Cir. 2023). It also exceeds the statutory limits on federal court's authority. As the Supreme Court has recently held, injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *CASA*, 606 U.S. at 852.

Plaintiffs' proposed preliminary injunction runs afoul of these principles. It is the exact type of universal injunction the Supreme Court just held unlawful in *CASA* and that the Sixth Circuit rejected in *L.W. See* Dkt. 1 at 16 ¶ b; Dkt. 6 at 22. It goes even beyond the putative class, seeking to

27

enjoin "enforcement of Section 1"—full stop. Dkt. 6 at 22. But complete relief to the Plaintiffs would be narrow in this case. To the extent the Court interprets ROCA to conflict with federal law, it should enjoin only those applications of the law. *See United States v. Grace*, 461 U.S. 171, 180-83 (1983) (holding a statute unconstitutional only "insofar as" it extended to public sidewalks); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504-05 (1985) (finding statute unconstitutional only "insofar as the word 'lust' is taken to include normal interest in sex"). And it should enjoin those applications of the law *only as to these Plaintiffs* or, if a class is certified, as to an appropriately narrowed class. *CASA*, 606 U.S. at 852; *L. W.*, 83 F.4th at 490. As the Supreme Court put it, "neither declaratory or injunctive relief can directly interfere with enforcement of contested statutes or ordinances *except with respect to the particular federal plaintiffs*, and the State is free to prosecute others who may violate the statute." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931 (1975).

Not only that, but the Court should also limit the injunctive relief to those Defendants who have enforcement authority over Plaintiffs. *Supra* Part I.A.2; *CASA*, 606 U.S. at 841-44.

**B.      The Court should not enter class-wide relief.**

Even considering whether a broader remedy is permissible because of the class action context, Plaintiffs are not entitled to class-wide relief because (1) the Court likely will not be able to rule on their motion for class certification before ROCA goes into effect and (2) Plaintiffs lack standing.[6] And, regardless, any class-wide injunction issued must come with appropriate security.

Timing of Class Motion. As this Court has observed, "it may turn out to be infeasible or inadvisable for [the Court] to decide the Motion for Class Certification prior to July 1, 2026" and, if that happens, injunctive relief "should not or even must not be afforded to anyone other than the two named Plaintiffs." Dkt. 11 at 1. The Court has this exactly right. The Sixth Circuit has long recognized

---

[6] Defendants reserve their arguments about Plaintiffs ability to satisfy the rigorous requirements of Fed. R. Civ. P. 23 for their response to Plaintiffs' Motion for Class Certification. Dkt. 7.

28

that "class-wide relief, such as the injunction . . . is appropriate only where there is a properly certified class." *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) (quoting *Brown v. Trustees of Boston University*, 891 F.2d 337-361 (1st Cir.1989)).

Because the "time-sensitive nature" of this case is entirely of Plaintiffs' manufacturing, there is no cause for the Court to try to issue an "inadvisable" expedited ruling on their motion for class certification. Dkt. 11 at 1. As early as February 11, 2026, the General Assembly had public discussions about ROCA, and at that time, the proposed law had the same scope and contents as the enacted law. Tenn. H. Crim. Justice Subcommittee, at 01:32-27:30 (Tenn. Feb. 11, 2026), https://tinyurl.com/mrynypea. The General Assembly passed the law on April 6, 2026. 2026 Tenn. Pub. Acts, ch. 771 § 1, https://legiscan.com/TN/text/HB1704/2025. The Governor signed it on April 21, 2026. *Id.* Plaintiffs then waited 44 days, until June 4, 2026, to sue, Dkt. 1, and until June 5, 2026, to serve Defendants, Dkt. 10. Plaintiffs had 44 days in which to seek class-wide preliminary injunction in a timeframe that would not burden the Court and Defendants. They did not do so. And they refused to schedule the depositions that Defendants need to respond to their motion for certification at a time that Defendants could take them. Dkts. 17-18. Thus, they are not entitled to an expedited ruling on class-wide injunctive relief.

Standing and Class Actions. The "usual three-part test for standing applies with full force in the class-action context." *Fox*, 67 F.4th at 294. Indeed, a plaintiff's decision to assert class action allegations in a complaint "adds nothing to the question of standing." *Id.* (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). Plaintiffs have no injury. *Supra* Part I.A.1. And they cannot rely on any alleged injury to members of a broader class to obtain an injunction on behalf of that class. *Fox*, 67 F.4th at 294-300. *Williams v. City of Cleveland*, 907 F.3d 924, 934 (6th Cir. 2018).

Security for Class-Wide Injunction. If the Court does issue class-wide relief, however, that would require Plaintiffs to post more than the nominal bond of $1 that they request. Dkt. 6 at 22.

29

Courts may issue injunctions "only" if they require plaintiffs to post "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Because of their cooperation with federal immigration officials, and the absence of allegations about Plaintiffs relying on Medicaid or public education, the official-capacity Defendants would likely not sustain significant costs and damages if they are enjoined from enforcing the Act against Plaintiffs.

The same cannot be said for the unknown number of immigrant class members who are not cooperating with federal immigration officials while intentionally refusing to leave Tennessee despite the outstanding, valid, and final orders of removal issued against them. Plaintiffs believe this class includes, at a minimum, "approximately 22,000 individuals." Dkt. 7 at 5. There are significant costs associated with these individuals' presence in Tennessee. "Federal law requires the State to provide emergency Medicaid to noncitizens and public education to all children, regardless of their immigration status." *Texas v. United States*, 50 F.4th 498, 517 (5th Cir. 2022). In 2022, the average cost associated with emergency Medicaid across the United States was approximately $10 per patient. Patricia May G. Santos et al*., Emergency Medicaid Spending for Undocumented Immigrants in the US* ("*Emergency Medicaid*"), 334 JAMA. 2132, 2132-34 (2025), https://tinyurl.com/494p3xyj. And, in 2025, Tennessee officials "received approximately 11,340 reports of individuals suspected to not be lawfully present in the United States who were charged or convicted of a criminal offense in this state." *See* 2025 Immigration Report, Tenn. District Attorneys General Conference, 3 (Jan. 30, 2026), https://perma.cc/XT53-PYBF. Defendants, of course, bear the costs of prosecuting these criminal offenses or defending these convictions on appeal.

Because of the expedited briefing schedule, Dkt. 11, Defendants cannot provide a full assessment of the costs to the State this injunction may cause. Thus, should the Court issue class-wide relief, Defendants request a minimal bond of $10 per estimated class member to cover the rough-

estimate of costs for Medicaid emergency services, totaling $220,000. *See Emergency Medicaid*, at 2132-34. After Defendants have a full opportunity to review this issue and the burden that such an injunction may impose on the State, Defendants may seek to supplement this request.

## CONCLUSION

For these reasons, the motion for preliminary injunction should be denied.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Miranda Jones*
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General
JESSICA BERK (BPR# 043649)
Assistant Attorney General
DAVID WICKENHEISER (BPR# 040427)
Assistant Attorney General
Constitutional Defense Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 521-0417
Miranda.Jones@ag.tn.gov
Jessica.Berk@ag.tn.gov
David.Wickenheiser@ag.tn.gov
*Counsel for Defendants*

31

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties below:

Lucas Cameron-Vaughn
Zee Scout
ACLU (Nashville Office)
P O Box 120160
Nashville, TN 37212
615-320-7260
lucas@aclu-tn.org
zscout@aclu-tn.org

Peter McGraw*
Efrén Olivares*
Kevin Siegel*
National Immigration Law Center
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
mcgraw@nilc.org
olivares@nilc.org
siegel@nilc.org

Hannah Steinberg*
Cody Wofsy*
Oscar Sarabia Roman*
Spencer Amdur*

American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
hsteinberg@aclu.org
cwofsy@aclu.org
osarabia@aclu.org
amdur@aclu.org

Noor Zafar*
Grace Choi*
Omar Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
nzafar@aclu.org
gchoi@aclu.org
ojadwat@aclu.org

*Counsel for Plaintiffs*

s/ *Miranda Jones*
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General

32