IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LUCY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. 3:26-cv-00763 |
| JONATHAN SKRMETTI, et al., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

In this putative class action, Plaintiffs challenge Section 1 of Tennessee House Bill 1704 ("H.B. 1704"), a recently enacted provision of Tennessee state law that will go into effect on July 1 of this year. Section 1 of H.B. 1704 prescribes criminal penalties in certain circumstances for aliens[1] who are and remain within the state of Tennessee and against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a).

Pending before the Court are five motions. The first motion is a "Motion for Preliminary Injunction and Memorandum of Law in Support" (Doc. No. 6, "Preliminary Injunction Motion"), filed by the two named Plaintiffs, Lucy and Benjamin.[2] Via the Preliminary Injunction Motion,

---

[1] "Alien" is a term that in various contexts has long had an established legal meaning that may vary just slightly across legal contexts, as discussed in a footnote below. In the instant context (and well as other legal contexts), "alien" (as contrasted with "illegal alien") is not a derogatory term but rather simply a legal term that carries certain context-specific consequences.

[2] Lucy and Benjamin are not the actual (respective) names of Plaintiffs. Instead, they are (respective) pseudonyms that Plaintiffs have chosen (and sought leave via a motion (Doc. No. 8, "Pseudonym Motion")) to use. Plaintiffs' Pseudonym Motion (Doc. No. 8) is also pending and is resolved herein and in the accompanying order.

Plaintiffs seek a pre-enforcement injunction[3] barring the enforcement of Section 1 of H.B. 1704 "against Plaintiffs and [members of] the [putative] class." (Doc. No. 6 at 3). Supporting the Preliminary Injunction Motion are the respective declarations of Lucy (Doc. No. 6-1, "Declaration of Lucy") and Benjamin (Doc. No. 6-2, "Declaration of Benjamin"). Defendants[4] have filed a response (Doc. No. 25, "Preliminary Injunction Response") in opposition to the Preliminary Injunction Motion. Plaintiffs have filed a reply (Doc. No. 40, "Preliminary Injunction Reply") in further support of the Preliminary Injunction Motion.[5]

The second motion is Plaintiffs' "Motion for Class Certification and Memorandum of Law in Support" (Doc. No. 7, "Class Certification Motion"), wherein Plaintiffs request certification of the putative class in this case under Rule 23(b)(2).[6] The Class Certification Motion is supported

---

[3] To say that Plaintiffs seek a "pre-enforcement injunction" is to say that Plaintiffs seek to enjoin the enforcement of Section 1 of H.B. 1704 prior to Section 1 of H.B. 1704 being enforced against Plaintiffs (and members of the putative class in this case).

  Likewise (and more generally), when referring to an action or suit as being a "pre-enforcement" action or suit, the Court means to say that the action (like this action) is challenging a particular statute prior to that statute's enforcement against the plaintiff(s) bringing the action.

[4] When using the term "Defendants" herein, the Court is referring collectively to all defendants in this action, namely Tennessee Attorney General and Reporter Jonathan Skrmetti ("General Skrmetti"), Commissioner of Safety and Homeland Security for the State of Tennessee Jeff Long ("Long"), District Attorney General for the Sixth Judicial District of Tennessee Charme Allen ("Allen"), District Attorney General for the Ninth Judicial District of Tennessee Russell Johnson ("Johnson"), District Attorney General for the Thirteenth District of Tennessee Bryant C. Dunaway ("Dunaway"), District Attorney General for the Fifteenth Judicial District of Tennessee Jason Lawson ("Lawson"), District Attorney General for the Twentieth Judicial District of Tennessee Glen Funk ("Funk"), District Attorney General for the Twenty First Judicial District of Tennessee Stacey Edmonson ("Edmonson"), District Attorney General for the Twenty Third Judicial District of Tennessee Ray Crouch ("Crouch"), District Attorney General for the Twenty Fourth Judicial District of Tennessee Neil Thompson ("Thompson"), District Attorney General for the Twenty Fifth Judicial District of Tennessee Mark Davidson ("Davidson"), District Attorney General for the Twenty Sixth Judicial District of Tennessee Jody Pickens ("Pickens"), District Attorney General for the Twenty Eighth Judicial District of Tennessee Fred Agee ("Agee"), and District Attorney General for the Thirtieth Judicial District of Tennessee Steve Mulroy ("Mulroy").

[5] Non-party United States of America ("Government") has filed a Statement of Interest (Doc. No. 30), therein stating that it is the position of the Government that Section 1 of H.B. 1704 is not preempted by federal immigration law.

[6] The putative class in this case is defined as:

by two declarations (Doc. Nos. 7-1, 7-2) of Plaintiffs' counsel. Defendants have filed a response

(Doc. No. 35, "Class Certification Response")[7] in opposition to the Class Certification Motion.

The Class Certification Response is supported by an exhibit (Doc. No. 34, "Defendants' Sealed

Exhibit"), which is filed under seal and is composed of Plaintiffs' interrogatory responses and

excerpts from transcripts of the respective depositions of Plaintiffs. Plaintiffs have filed a reply

(Doc. No. 45 "Class Certification Reply") in further support of the Class Certification Motion. The

Class Certification Reply is supported by an exhibit (Doc. No. 44, "Plaintiffs' Sealed Exhibit"),

which is filed under seal and is composed of Plaintiffs' deposition transcripts and discovery

responses. The Class Certification Reply is also supported by an exhibit (Doc. No. 45-2), which is

---

> All noncitizens who, now or in the future, are aliens against whom a valid final order of removal has been outstanding for 90 days or longer by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a), and who intentionally fail or refuse to depart from Tennessee.

(Doc. No. 7 at 4). The Court will refer herein to this proposed class as the "Putative Class." Plaintiffs specifically seek what they call "provisional" certification of the Putative Class. Given the Court's decision herein dismissing this action and denying the Class Certification Motion as moot, the Court declines at this juncture to discuss the propriety of (or mechanism underlying) a "provisional" class certification. The Court observes, however, that in requesting "provisional" class certification, Plaintiffs noted:

> Because "the certification of a class is always provisional" until final judgment, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016), the term "provisional" is formally "redundant." See Marcus, supra at 20. Courts typically label class certification granted alongside preliminary relief "provisional" to indicate openness to revisi[ti]ng class issues later in litigation if warranted. *See id.* at 20-21.

(Doc. No. 7 at 15 n.4). That is all to say that Plaintiffs' sought-after class certification (i.e., "provisional" certification) is in practice and effect no different from class certification as that term is regularly understood; on the other hand, the Court's acceptance of the characterization of the class certification as being merely "provisional" does serve the useful purpose of conveying that the Court is open to revisiting class certification later in the litigation as the record is developed more fulsomely.

[7] Of note, via an order (Doc. No. 32), the Court granted Defendants' request "to incorporate arguments by reference between the [Preliminary Injunction Response and the Class Certification Response] to avoid unnecessary duplication." (Doc. No. 31 at 1).

not filed under seal and which is composed of the responses of certain Defendants to Plaintiffs' requests for production.[8]

The third motion is "Plaintiffs' Motion for Leave to Proceed Pseudonymously and Memorandum in Support" (Doc. No. 8, "Pseudonym Motion"), wherein Plaintiffs "seek leave to proceed pseudonymously, under the following [respective] pseudonyms: Lucy and Benjamin." (Doc. No. 8 at 2). Via a joint notice (Doc. No. 28, "Notice"), the parties have informed the Court that "Defendants no longer oppose" the Pseudonym Motion. (Doc. No. 28 at 1).

The fourth motion is a motion to seal (Doc. No. 33, "First Motion to Seal") filed by Defendants, wherein Defendants seek leave to file under seal Defendants' Sealed Exhibit (Doc. No. 34).

The fifth and final motion pending before the Court is a motion to seal (Doc. No. 43, "Second Motion to Seal" and, collectively with the "First Motion to Seal," "Motions to Seal") filed by Plaintiffs, wherein Plaintiffs seek leave to file under seal Plaintiffs' Sealed Exhibit (Doc. No. 44).

For the reasons described herein, the Preliminary Injunction Motion (Doc. No. 6) will be **DENIED**, the Class Certification Motion (Doc. No. 7) will be **DENIED** as moot, the Pseudonym Motion (Doc. No. 8) will be **GRANTED**, the First Motion to Seal (Doc. No. 33) will be **DENIED**, and the Second Motion to Seal (Doc. No. 43) will be **DENIED**. Finally, this action will be **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

---

[8] Plaintiffs also filed, at Docket No. 45-1, an ostensible exhibit that actually serves as a mere placeholder that refers to Plaintiffs' Sealed Exhibit.

BACKGROUND[9]

Plaintiffs initiated this lawsuit by filing the complaint (Doc. No. 1, "Complaint") on June 4, 2026. In the Complaint, Plaintiffs bring a single claim, wherein they assert that Section 1 of H.B. 1704, a recently enacted Tennessee criminal statute, is preempted by federal law. (Doc. No. 1 at ¶¶ 59-62).[10] Below, the Court will provide a review of the circumstances underlying this action, beginning with a discussion of the parties in this action, and then turning to a review of the challenged provision (Section 1) of H.B. 1704. The Court will then briefly outline the sequence in which it will address the pending motions.

### 1. The Parties

Lucy—one of the two Plaintiffs in this action—is a 58-year-old foreign national who currently lives in Memphis, Tennessee. (Doc. No. 6-1 at ¶¶ 2-3). After entering the United States

---

[9] The following facts, unless somehow qualified herein (as for example by "Plaintiffs allege that" or "Defendants assert that"), are taken as true for purposes of the *pending motions* because they are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice. However, the Court's *sua sponte* inquiry into whether Plaintiffs have adequately alleged standing is made based solely on the allegations of the Complaint (and not from any facts that are asserted in or apparent from the record outside of the Complaint); for purposes of that inquiry, the factual allegations in the Complaint are taken as true.

The Court notes that when citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document. In addition, where the Complaint is cited herein without including a paragraph symbol, the citation is not to a paragraph number but rather to a page that contains the cited content outside the boundaries of any paragraph.

[10] As Plaintiffs argue, and Defendants do not dispute, "Plaintiffs have a cause of action to sue under the longstanding equitable practice reflected in *Ex Parte Young*, 209 U.S. 123 (1908), which makes clear that plaintiffs threatened with [alleged federally] preempted prosecutions can sue in equity." (Doc. No. 6 at 9 n. 6). *See also Smith v. Kentucky*, 571 F. Supp. 3d 735, 739 n.1 (W.D. KY 2021) ("*Ex Parte Young*[] recognized an equitable cause of action (of sorts) to enjoin constitutional violations."); *Foulks v. Ohio Dep't of Rehab. & Correction*, 713 F.2d 1229, 1231 (6th Cir. 1983) ("*In Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court recognized an equitable cause of action against state officers [] for violations of constitutional rights.").

on a visitor's visa, she applied for asylum, and her application for asylum was subsequently denied. (*Id.* at ¶¶ 6-7). Lucy was then issued a removal order, which she appealed unsuccessfully to the Board of Immigration Appeals and to the United States Court of Appeals for the Sixth Circuit. (*Id.* at ¶ 7). Lucy's appeals were denied in 2005. (*Id.*). Lucy has now begun pursuing an application for asylum under the Violence Against Women Act, "which would provide [her] with lawful permanent residence." (*Id.* at ¶ 9). Lucy is "extremely worried that [she] will be arrested under H.B. 1704" because she believes that "the law applies to people like [her] who have a final removal order." (Doc. No. 6-1 at ¶ 10).

Benjamin—the other Plaintiff in this action—is a 35-year-old foreign national who currently lives in Memphis, Tennessee. (Doc. No. 6-2 at ¶¶ 2-3). Benjamin entered the United States "when [he] was very young." (*Id.* at ¶ 4). After coming to the United States, Benjamin's family "pursued asylum," but the family's asylum "application was denied." (*Id.* at ¶ 5). Subsequently, Benjamin "was ordered removed when [he] was a teenager." (*Id.*). Benjamin then applied for the Deferred Action for Childhood Arrival ("DACA") program and "was granted DACA, [whereafter] the federal immigration official [he] checked in with congratulated [him] and told [him he] did not have to check in any more." (*Id.* at ¶ 6). Benjamin is "very worried that [he is] going to be arrested, put in jail, and convicted under H.B. 1704" because he has read that the "law applies to people like [himself] who have a final removal order and continue to live in Tennessee." (Doc. No. 6-2 at ¶ 8).

There are fourteen defendants in this action. One defendant, General Skrmetti, is the Attorney General and Reporter of the State of Tennessee. (Doc. No. 1 at ¶ 10). Another defendant, Long, is the Commissioner of Safety and Homeland Security for the State of Tennessee. (*Id.* at ¶ 11). Each of the remaining twelve defendants—these being Allen, Johnson, Dunaway, Lawson,

Funk, Edmonson, Crouch, Thompson, Davidson, Pickens, Agee, and Mulroy—is a state district attorney general. (*Id.* at ¶¶ 12-23).[11]

### 2. Section 1 of H.B. 1704

As noted above, the Complaint challenges Section 1 of H.B. 1704. H.B. 1704 was signed into law on April 21, 2026. 2026 Tenn. Pub. Acts, ch. 771 § 1, https://legiscan.com/TN/text/HB1704/2025. As also noted above, Section 1 of H.B. 1704 goes into effect on July 1, 2026. H.B. 1704, § 3(b).[12] In relevant part, that is in Section 1, H.B. 1704 provides:

> SECTION 1. Tennessee Code Annotated, Title 39, Chapter 17, Part 1, is amended by adding the following new section:
>
> > (a) A person who is eighteen (18) years of age or older commits an offense who:
> >
> > > (1) Is an alien against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a); and
> > >
> > > (2) Intentionally fails or refuses to depart from this state within a period of ninety (90) days from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court.
> >
> > (b) A violation of subsection (a) is a Class A misdemeanor.
> >
> > (c) If the person has not exhausted all available paths under federal law for challenging the final order of removal, then the court shall grant a stay of the criminal proceedings until the person has exhausted all

---

[11] It is unclear from the Complaint why these particular Tennessee district attorneys general were named as defendants (as opposed to other, or even *all* Tennessee district attorneys general). It appears likely that the choice to name as defendants these particular district attorneys general (representing as they do distinct judicial districts covering a particular geographic area) might be related to where one or both Plaintiffs likely will travel within Tennessee. (*See* Doc. No. 6-1 at ¶ 14 (Lucy declaring that she intends "to drive [her] son to college in Knoxville on the I-40 highway from Memphis, which goes through many places, including Nashville.")).

[12] Although H.B. 1704 has been codified in Tennessee Code Annotated, Title 39, Chapter 17, Part 1, for ease of references all citations to H.B. 1704 herein are made to H.B. 1704, rather than to Tennessee Code Annotated.

available paths under federal law for challenging the final order of removal.

H.B. 1704, § 1. In other words Section 1 of H.B. 1704 requires that "an alien"[13] who is eighteen years of age or older, "against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a)," neither fail nor refuse to depart the state of Tennessee within "ninety (90) days from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court," or else that alien will commit a Class A misdemeanor and thus be subject to criminal penalties. H.B. 1704, § 1. As noted above, Plaintiffs assert in the Complaint that Section 1 of H.B. 1704 is preempted by federal immigration law.

### 3. The Motions

As previously stated, there are five motions that the Court will address herein: the Preliminary Injunction Motion (Doc. No. 6), the Class Certification Motion (Doc. No. 7), the Pseudonym Motion (Doc. No. 8), and the Motions to Seal. (Doc. Nos. 33, 43).

Below, the Court will begin by reviewing the Preliminary Injunction Motion, in particular focusing on whether Plaintiffs have sufficiently established standing so as to seek preliminary

---

[13] H.B. 1704 does not define the term "alien[s]." The term, though, has a relatively consistent (and non-derogatory) definition across the various legal contexts in which it is used. For purposes of federal immigration law, the definition is clear enough. *See, e.g.*, 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."); 8 U.S.C.A. § 1101(a)(22) ("The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."). Setting aside the issue of who "owes permanent allegiance" to the United States despite not being a citizen of the United States—a question as to which there appears to be a relatively clear answer, albeit one into which the Court need not delve herein—the definition is, as just noted, clear. H.B. 1704 does not expressly incorporate the above-referenced federal statutory definition, though it is not hard to conclude that such definition should apply to the term "alien" as used in H.B. 1704. In any event, it appears undisputed that each of the Plaintiffs is an "alien," and indeed Plaintiffs' claim to have standing seems premised in pertinent part on the fact that they are "aliens" for purposes of H.B. 1704.

injunctive relief. After resolving the Preliminary Injunction Motion, the Court will consider whether Plaintiffs have asserted sufficient factual matter to establish standing in their Complaint so as for the Complaint to avoid dismissal for lack of standing. The Court will then turn to the Class Certification Motion, the Pseudonym Motion, and the Motions to Seal.

DISCUSSION

## 1. Preliminary Injunction Motion

The Court will begin by examining the legal standard governing the issuance of preliminary injunctions. The Court will then examine whether Plaintiffs have sufficiently established standing to seek preliminary injunctive relief; in so doing, the Court will conduct a review of both standing generally and certain unique elements required to establish standing in the context of a pre-enforcement challenge (such as the one here at issue) in particular.

### a. Preliminary Injunction Legal Standard

Those seeking a preliminary injunction must meet four requirements.[14] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance

---

[14] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are factors rather than requirements, except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a preliminary injunction alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g., D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with other (including more recent) Sixth Circuit case law and with Supreme Court cases (including *Winter*) that describe these as all being requirements (i.e., things that *must* be established. *See, e.g., id.* at 328, 329 (Nabaldian, J., concurring) (noting that "[*Winter*]'s language seems clear—a plaintiff *must* establish the factors" and questioning "whether the balancing analysis itself aligns with *Winter*.").

Notably, other courts have likewise treated the four items as requirements (prerequisites), rather than as factors. *E.g., Southern Poverty Law Ctr. v. United States Dep't Homeland Sec.*, Civil Action No. 18-760 (CKK), 2020 WL 3265533, *10 (D.D.C. June 17, 2020); *Transatlantic, LLC v. Humana, Inc.*, 8:13–CV–1925–T–17TBM, 2013 WL 3958361, *1 (M.D. Fla. Aug. 1, 2013).

The Court believes that it needs to choose between the two approaches—even if the substance or the outcome of the Motion does not turn on such choice—because the approach does dictate how a court goes about explaining its analysis and decision on a motion for preliminary injunction. And the Court believes that it should follow the latter line of cases, i.e., those that treat the standard as involving requirements rather than factors.

First, explaining and applying the standard in terms of requirements is substantially more straightforward than the alternative—which is to explain that the four items are factors to be balanced, except that, well,

of equities favors them; and that the public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022).

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g., Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly*, 684 F.3d at 614 (upholding denial of preliminary injunction when plaintiff made only a "small

---

that's only partially true because actually irreparable harm *is* a requirement (but also, if it exists, *then* a factor to be balanced along with the other factors) and likelihood of success (at least to some minimal extent) is also required. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) ("Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory."); *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (noting that it is reversible error for a district court to issue a preliminary injunction "where there is simply no likelihood of success on the merits (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010))). Second, it is easier to articulate a conclusion as to whether requirements are satisfied (which is done in simple yes/no, or satisfied/unsatisfied, terms) than to articulate the outcome of some so-called "balancing" of (mismatched) factors. This is especially true given that case-specific balancing apparently is based in part on some inscrutable sliding scale of required likelihood of success on the merits that depends on the strength of the other three factors. *See, e.g., In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985) ("[T]he degree of likelihood of success required may depend on the strength of the other factors.").

The Court notes that herein it quotes some case law that refers to these items as "factors" and describes them in language that befits factors more than requirements—as for example by referring to the *issue* of *whether* issuing the injunction would harm others (factor-style language) rather than the *requirement* that the balance of equites favors the movant, or by referring to the issue of where the public interest lies (factor-style language) rather than the requirement that the public interest favors an injunction. In so doing, the Court is confident that the astute reader readily will be able to translate the factor-style language into the corresponding language of requirements for purposes of following the Court's analysis herein.

showing" of evidence); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead relied on mere allegations); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. 1996) (affirming denial of a preliminary injunction where the district court relied on a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-CV-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice."), *report and recommendation adopted*, 2008 WL 2095387 (W.D. Mich. May 15, 2008). The decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

> b. <u>Analysis of the Preliminary Injunction Motion</u>

Because Defendants have raised, in the Preliminary Injunction Response (and for that matter also in the Class Certification Response), purported deficiencies with respect to Plaintiffs' standing, the Court will begin its analysis of the Preliminary Injunction Motion with an examination of standing, starting with how standing relates to the likelihood of success on the merits requirement for a preliminary injunction.[15]

---

[15] An astute reader may wonder why the Court is addressing the Preliminary Injunction Motion (and the specific question of whether Plaintiffs have sufficiently established standing so as to seek such injunctive relief) before addressing whether Plaintiffs have actually alleged sufficient factual matter in their Complaint so as to establish standing at least for the purposes of preventing *dismissal* of this action. The Court does so for two reasons.

First, as this Court has observed in the past, the Court may address a motion for preliminary injunctive relief prior to addressing the Court's subject-matter jurisdiction (of which standing is a necessary, but not sufficient part) over a particular action if the Court is *denying* the request for preliminary injunctive relief. *Cf. Memphis A. Phillip Randolph Inst. v. Hargett,* 482 F. Supp. 3d 673, 704 n.26 (M.D. Tenn.), *aff'd on other grounds sub nom. Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378 (6th Cir. 2020). The Court realizes that it cannot *grant* a preliminary injunction prior to resolving a colorable challenge to subject-matter jurisdiction. *See*, *e.g.*, *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 384 (E.D.N.Y. 2016) (collecting authorities). Obviously, a court should not exercise judicial authority

Standing is relevant to the likelihood-of-success-on-the-merits requirement for a preliminary injunction. *See Moms for Liberty - Wilson Cnty., Tennessee v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 509 (6th Cir. 2025) ("[S]tanding analysis, though not an inquiry into a claim's merits, is still 'relevant to [the] likelihood of success [on the merits]' inquiry" (quoting *Arizona v. Biden*, 40 F.4th 375, 383 (6th. Cir. 2022))). This only makes sense; after all, if a plaintiff lacks standing to bring a claim (and thus the Court lacks subject-matter jurisdiction over that claim),[16] then it necessarily follows that a plaintiff would not have a likelihood of success on the merits (or even a likelihood of *having the court reach* the merits) of that claim. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018) ("an 'affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of

to compel a defendant, via an injunction, to do or not to do something if the court lacks authority to exercise affirmative judicial power. And a lack of subject-matter jurisdiction is a lack of precisely this kind of affirmative authority. But a *refusal* to exercise affirmative judicial power is another matter entirely; if the court's decision is to deny a request for a preliminary injunction, the concerns about unauthorized use of judicial power are not present in the same way. For this reason, it appears that the Sixth Circuit permits a district court to first deny a motion for a preliminary injunction and then resolve a challenge to subject-matter jurisdiction. *See Freeman v. Helldoerfer*, 208 F.3d 213 (6th Cir. 2000) (affirming district court's denial, in a case removed from state court, of a motion for preliminary injunction prior to the court's remand to state court based on the district court's lack of subject-matter jurisdiction). And recently, the Sixth Circuit put this very principle into action when it affirmed on the merits the denial of a request for a preliminary injunction without addressing its own subject-matter jurisdiction over the case. *Von Carruthers v. Skrmetti*, No. 26-5433, 2026 WL 1417798, at *1 (6th Cir. May 20, 2026).

Second, and as indicated in the first paragraph of this footnote, the Court's analysis of the Preliminary Injunction Motion—involving as it does issues with respect to whether Plaintiffs have sufficiently established standing to seek preliminary injunctive relief—is ultimately related to the question of whether Plaintiffs have in fact alleged sufficient factual matter to establish standing (and thus subject-matter jurisdiction) in their Complaint.

Accordingly, the Court will first address the Preliminary Injunction Motion (and the standing issues raised with respect to that motion) and then turn to considering whether Plaintiffs have actually alleged sufficient factual matter with respect to standing so as to prevent the dismissal of this action.

[16] As the Court will discuss in more detail below, "Standing is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (citations omitted).

the court's reaching the merits, which in turn depends on a likelihood that [the] plaintiff has standing.'" (quoting *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring in part))).

Given the relevance here of standing, the Court next will provide a review of standing principles, with a particular focus on standing in the context of a pre-enforcement challenge such as the one that Plaintiffs present.

### ii. Standing Generally

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is a core component of this "case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The requirement of standing "ensure[s] that federal courts do not exceed their authority," by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). In other words, standing is a jurisdictional requirement—and in particular a requirement for a federal court to exercise subject-matter jurisdiction over a particular action. *See Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915–16 (6th Cir. 2002). Thus, if no plaintiff has standing, the court lacks subject-matter jurisdiction. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). On the other hand, if even one plaintiff has standing, the court may (not to say must) exercise subject-matter jurisdiction over an action and reach the merits of the claims in that action. *See United States v. Texas*, 599 U.S. 670, 709 n.1 (2023) (Alito, J., dissenting) ("In a case with multiple plaintiffs, Article III permits us to reach the merits if any plaintiff has standing. Because [one plaintiff] clearly meets our test for Article III standing, it is not necessary to consider whether the other plaintiff . . . also satisfies that test." (citation omitted)).

"[A]s the party invoking federal jurisdiction," a plaintiff has the burden of establishing standing by demonstrating that she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[17] *Spokeo*, 578 U.S. at 338 (citations omitted). A plaintiff "*must* satisfy" this "three-part test for each injury that they allege, for each defendant that they sue, and for each remedy that they seek." *Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024) (emphasis added) (citing *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023)); *Davis v. Colerain Township*, 51 F.4th 164, 171 (6th Cir. 2022)). The plaintiff "bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). At the preliminary injunction stage, a "plaintiff must make a 'clear showing'" that she is likely to establish each of the three elements of standing in order for a preliminary injunction to issue. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *Moms for Liberty*, 155 F.4th at 509. Importantly, and consistent with the Court's observations earlier, at the preliminary injunction stage the plaintiff(s) must make a clear showing as to the three elements of standing through *evidence*, and to do so a plaintiff may not merely rely on allegations in the pleadings. *See Moms for Liberty*, 155 F.4th at 509 (noting that a "plaintiff must make a 'clear showing' through *evidence* that she is 'likely' to

---

[17] Often "the questions of causation and redressability overlap." *Massachusetts v. EPA*, 549 U.S. 497, 543 (2007) (Roberts, J., dissenting). Indeed, as the Sixth Circuit has noted, "[c]ausation and redressability are related elements of standing that frequently have been treated as one." *Kardules v. City of Columbus*, 95 F.3d 1335, 1352 (6th Cir. 1996). Thus, usually, "if a plaintiff can demonstrate that his injuries were caused by the defendant, the courts are in a position to redress the situation." *Id.* On the other hand, "the Supreme Court has treated these two requirements separately." *Id.* The upshot is that the Court must and does recognizes that the requirements are legally and conceptually distinct yet tend to go together in practical application.

establish each element of standing" for a preliminary injunction issue (cleaned up) (emphasis added)).[18]

Given that the parties' arguments as to standing focus in large part on whether Plaintiffs have adequately shown[19] as required that they will suffer an injury-in-fact from the enforcement

[18] Notably, and as will be made clear below, a plaintiff's burden to establish standing for the purposes of seeking a preliminary injunction is a different burden than plaintiff's burden to establish standing at the pleading stage so as for an action to survive a motion to dismiss (or to avoid being dismissed *sua sponte*) for lack of standing. For context, the Court will briefly review the legal standard that governs the *dismissal* (on motion or *sua sponte* by the court) of a complaint for lack of standing.

Standing is "an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)," and motions to dismiss for lack of standing are made under Rule 12(b)(1). *Lyshe*, 854 F.3d at 857. *See also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013); *Allstate Ins. Co. v. Global Medical Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013). A challenge to the plaintiff's standing can be in the form of either a facial attack or a factual attack. *See Kale v. Procollect, Inc.*, 547 F. Supp. 3d 793, 796 (W.D. Tenn. 2021) ("Challenges to standing can be facial or factual."); *In re Saffold*, 373 B.R. 39, 43 (Bankr. N.D. Ohio 2007) ("A challenge to standing may be either a facial attack on a pleading or a factual attack."). "A facial attack on standing challenges the legal sufficiency of the complaint, whereas a factual challenge against standing questions whether the complaint's factual assertions reflect reality." *Shumway v. Neil Hosp., Inc.*, 570 F. Supp. 3d 585, 588 (W.D. Tenn.) (citing *Ohio Nat. Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When there is a facial challenge to standing, the court must regard all [factual] allegations in the complaint as true." *Id.* And so, "[w]hen analyzing a facial attack, the court must accept the plaintiff's [factual] allegations regarding standing as true and determine whether the plaintiff has asserted a plausible claim that it has standing." *Ctr. for Biological Diversity v. Tennessee Valley Auth.*, No. 3:21-CV-319-TAV-DCP, 2022 WL 4137824, at *2 (E.D. Tenn. Sept. 12, 2022). However, when a court considers a factual attack on a complaint, "no presumptive truthfulness applies to the factual allegations." *Ohio Nat. Life Ins.*, 922 F.2d at 325. Instead, "the district court must [] weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist[] [and] a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

Under an established legal principle, the Court may dismiss an action for lack of standing not just in response to a defendant's motion, but also *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction *sua sponte*, the court must dismiss the action."); *Belock v. Burt*, 19 F. App'x 323, 324 (6th Cir. 2001); *In re O'Donnell*, 326 B.R. 901 (B.A.P. 6th Cir. 2005). Although this principle is frequently stated, the standard that a court must apply in considering whether to *sua sponte* dismiss an action for lack of standing is less frequently articulated. The Court discusses this standard below.

[19] Here, and elsewhere, the Court will refer to Plaintiffs being required to "show" something in the context of establishing standing for the purposes of a preliminary injunction issuing. This terminology is shorthand for the burden that Plaintiffs must meet in order to establish standing for the purposes of a preliminary injunction issuing—namely that Plaintiffs must make a clear showing through evidence that they are likely to establish each of the three elements of standing. By using the terms "show" or "shown" the Court does not mean to suggest that Plaintiffs must *conclusively* show or establish anything at this stage of the litigation. The required "showing" is one of likelihood, not certainty.

of Section 1 of H.B. 1704, the Court will also provide a review of injury-in-fact, both generally

and as it relates to a pre-enforcement action seeking to challenge the application of a statute. An

alleged injury amounts to (the required) injury-in-fact "only if it is 'actual or imminent, not

"conjectural" or "hypothetical."'" *Christian Healthcare Centers, Inc. v. Nessel*, 117 F. 4th 826,

842 (6th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 at 158 (2014)). In

an action where a plaintiff challenges a particular statute or policy before it has been enforced

against the plaintiff—i.e., a pre-enforcement action such as the instant action—a "difficult" and

"'recurring issue' is 'determining when the threatened enforcement of a law creates an Article III

injury.'" *Christian Healthcare*, 117 F.4th at 843 (quoting *Driehaus*, 573 U.S. at 158). In *Crawford*

*v. United States Department of the Treasury*, 868 F.3d 438 (6th Cir. 2017), the Sixth Circuit

explained what is required to establish injury for Article III standing[20] in a pre-enforcement action.

The Sixth Circuit court wrote (on appeal of a district court's dismissal of a case, as opposed to a

denial of a preliminary injunction, for lack of standing):

> In a pre-enforcement challenge to a federal statute, the Supreme Court has held that a plaintiff satisfies the injury requirement of standing by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L.Ed.2d 895 (1979)); *see also Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975); *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977) (holding that one of the plaintiffs had standing to challenge a discriminatory zoning law where an injunction against the law would have produced "at least a 'substantial probability,' *Warth*, 422 U.S. at 504, 95 S. Ct. 2197, that" the plaintiff's desired housing project would "materialize").
>
> The mere *possibility* of prosecution, however—no matter how strong the plaintiff's intent to engage in forbidden conduct may be—does not amount to a "credible threat" of prosecution. Instead, the threat of prosecution "must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 1147, 185 L.Ed.2d 264 (2013) (quoting *Whitmore*, 495 U.S. at

---

[20] Herein, the terms "Article III injury" and "injury-in-fact" are used interchangeably.

158, 110 S. Ct. 1717). Putting the Supreme Court's language in *Warth, Driehaus*, and *Clapper* together: to have standing to bring a pre-enforcement challenge to a federal statute, there must be a *substantial probability* that the plaintiff actually will engage in conduct that is *arguably affected* with a constitutional interest, and there must be a *certain* threat of prosecution if the plaintiff does indeed engage in that conduct.

*Crawford*, 868 F.3d at 454-55. The upshot is that to establish an injury-in-fact in the context of a pre-enforcement challenge to a statute, a plaintiff must show three things: (1) that she has "an intent 'to engage in a course of conduct' arguably 'affected with a constitutional interest,' (2) that this conduct is arguably 'proscribed by a statute,' and (3) that there is 'a credible threat' of the statute's enforcement against the plaintiff." *Christian Healthcare*, 117 F.4th at 843 (quoting

[REMAINDER OF PAGE INTETIONALLY LEFT BLANK FOR FORMATTING REASONS]

*Driehaus*, 573 U.S. at 159).[21] [22] Notably, with respect to the third and final of these requirements for injury-in-fact, a plaintiff must demonstrate that there is a credible threat that the law will be enforced as to *that particular plaintiff*, *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) ("A plaintiff asserting standing to challenge a law before it has been enforced against him must show a 'credible fear' that the state or its agents will in fact enforce the law *in his case*." (emphasis added)). It necessarily follows that it is simply insufficient to show that there is a

---

[21] Curiously, the Sixth Circuit has not always been consistent in the terms that it uses to elucidate this three-part test for finding injury-in-fact in a pre-enforcement suit context. Indeed, in 2024, the Sixth Circuit elucidated this three-part test in the following—somewhat different—terms:

> Thus, we have permitted *pre*-enforcement review, but only when the plaintiff (1) "alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest,' " (2) that the challenged statute proscribes, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)), and (3) the plaintiff's intention generates a "*certainly impending*" threat of prosecution, *Crawford*, 868 F.3d at 454 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)).

*Friends of George's Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024). Notably, there is some inconsistency in the language that the Sixth Circuit has used for the third requirement of the test for showing an injury-in-fact in a pre-enforcement suit context—e.g., that a plaintiff must show that there is a "credible threat" of the statute's enforcement against the plaintiff. Sometimes the Sixth Circuit has referred to this requirement in terms of a plaintiff being required to show a "*certainly impending*" threat of prosecution or enforcement, *Friends of George's Inc.*, 108 F.4th at 435, and sometimes the Sixth Circuit has referred to this requirement in terms of a plaintiff being required to show that there is a *credible threat* of enforcement. *Christian Healthcare*, 117 F.4th at 843.

Ultimately the Court is able to reach its decision on the Preliminary Injunction Motion (and indeed a decision as to the continued viability of this action) without resolving the tension between whether a plaintiff must show a certainly impending threat of prosecution or merely must show that there is a credible threat of prosecution in order to show an injury-in-fact. With that said, the Court notes that in its view the framing of the third requirement of the test for showing injury-in-fact in a pre-enforcement suit context is better understood as requiring a plaintiff to make out a *credible* threat of enforcement, rather than to show that there is a *certainly impending* threat of enforcement. The Court takes such a view not least because the Court is hard pressed to conceive of what a certainly impending threat of prosecution would even look like in practice.

[22] The Court also notes for context that a consideration of the second requirement of the test for showing an injury-in-fact in a pre-enforcement suit context—e.g., that a plaintiff's conduct is arguably proscribed by a statute—is generally considered in terms of whether a plaintiff has an intent to engage in a course of conduct arguably proscribed by the challenged statute. *Friends of George's*, 108 F.4th at 438 (considering whether plaintiff has alleged an "intention to engage in a course of conduct arguably proscribed" by the challenged statute); *Christian Healthcare*, 117 F.4th at 852-53 (same).

credible threat the law will be enforced (to whatever extent) *generally* or a credible threat that the law will be enforced against particular *other* persons.

### iii. Application

The Court now turns to analyzing the parties' arguments as to standing. Defendants specifically assert that Plaintiffs have not made a clear showing that they are likely to suffer an injury-in-fact so as to have sufficiently established standing for the purposes of seeking a preliminary injunction. Defendants also challenge the traceability of Plaintiffs' injury-in-fact—to the extent Plaintiffs *do* have an injury—to General Skrmetti in particular. Below, the Court can and will start and end its standing analysis on whether Plaintiffs have demonstrated an injury-in-fact, and specifically on whether Plaintiffs have shown that they have an intent to engage in conduct that is arguably proscribed by Section 1 of H.B. 1704.

As noted just above, to establish an injury-in-fact in a pre-enforcement action, a plaintiff must show three things: (1) that she has "an intent 'to engage in a course of conduct' arguably 'affected with a constitutional interest,' (2) that this conduct is arguably 'proscribed by a statute,' and (3) that there is 'a credible threat' of the statute's enforcement against the plaintiff." *Christian Healthcare*, 117 F.4th at 843.

With respect to injury-in-fact, the parties' dispute hinges on whether Plaintiffs have shown that they intend to engage in conduct that is arguably proscribed by Section 1 of H.B. 1704 and whether Plaintiffs have shown that there is a credible threat of enforcement of Section 1 of H.B. 1704.

The Court first will examine whether Plaintiffs have shown that they have an intent to engage in conduct that is arguably proscribed by Section 1 of H.B. 1704. *Friends of George's*, 108 F.4th at 438 (observing where a plaintiff failed to show an intention to arguably violate the challenged statute that a plaintiff "cannot show a pre-enforcement injury" and so "lacks standing"). In considering that question, the Court must first examine the conduct that Section 1 of H.B. 1704 proscribes. *Friends of George's*, 108 F.4th at 435 ("To determine whether [a plaintiff] intends to engage in a course of conduct that the [statute] arguably proscribes, we must first figure out what the [statute] proscribes." (citation omitted)). Before doing so, the Court notes that Plaintiffs must make a showing that their (intended) conduct satisfies *all* the elements of the statute—so as to make the statute applicable to Plaintiffs' conduct; otherwise, they have not shown that they have an intent to engage in conduct that is arguably proscribed by the statute. *Friends of George's, Inc.*, 108 F.4th at 436 (noting that the burden is on the plaintiff to show its intention to engage in conduct that arguably meets the elements of a challenged statute).

Turning to Section 1 of H.B. 1704, it applies to (and only to) "an alien" who is eighteen years of age or older, "against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a)"; for such persons (and only for such persons), it proscribes failing or refusing to leave the state of Tennessee within "ninety (90) days from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court" ("90-day window") or else that alien will be subject to criminal penalties—namely a Class A misdemeanor. H.B. 1704, § 1. Put another way, Section 1 of H.B. 1704 imposes criminal penalties on an individual only if that individual (1) is an alien, (2), is 18 years of age or older, (3) is subject to a valid, final and outstanding removal order on the basis of that individual being a member of any of the classes

described in 8 U.S.C. § 1227(a), and (4) has failed or refused to leave the state of Tennessee within the 90-day window.

In their Preliminary Injunction Response, Defendants argue that Plaintiffs have not demonstrated with evidence (or even alleged) that Plaintiffs intend to engage in conduct that is arguably proscribed by Section 1 of H.B. 1704. Defendants argue first:

> Plaintiffs do not allege or declare that they are "a member of any of the classes described in 8 U.S.C. § 1227(a)." [H.B. 1704, § 1] This omission matters because 8 U.S.C. § 1227(a) does not cover all immigrants with final orders of removal. *See, e.g.,* 8 U.S.C. § 1229a(a)(2). To put it in Plaintiffs' own words, 8 U.S.C. § 1227(a) "describes noncitizens 'in and admitted to the United States' who fall within various 'classes of deportable [noncitizens].'" Dkt. 6 at 6 n.4 (quoting 8 U.S.C. § 1227(a)). If Plaintiffs do not fall within one of the classes in § 1227(a), then the Act does not apply to them. And they fail to establish—or even allege—into which class in § 1227(a) they might fall.

(Doc. No. 25 at 19). Defendants next argue:

> Plaintiffs likewise do not allege or declare that the orders against them are either "valid" or "outstanding" as [Section 1] requires. Dkt. 1 ¶¶ 8-9; Dkt. 6-1 ¶ 10; Dkt. 6-2 ¶ 8. Again, these omissions matter. The "substantive validity of [a] removal order" is a "distinct" question from its finality with significant impact on an immigrant's status in civil and criminal proceedings. *See, e.g., United States v. Palomar-Santiago,* 593 U.S. 321, 327 (2021). And many actions by both the federal government and immigrants themselves can remove the "outstanding" status of a final order of removal. *See, e.g., United States v. Bahlouli,* 790 F. Supp. 3d 559, 564 (W.D. Tex. 2025) (finding it unclear whether a removal order was outstanding because an immigration judge withheld removal). But Plaintiffs say nothing at all about the validity of the orders against them or whether those orders are outstanding. Indeed, Lucy is actively seeking cancellation of her order. See Dkt. 6-1 ¶ 9; 8 U.S.C. § 1229b(b)(2)(A)(i)(I).

(Doc. No. 25 at 19-20). Then, referring to the fact that Section 1 of H.B. 1704 cannot possibly be violated by any person who leaves within the 90-day window, Defendants argue:

> Plaintiffs further do not allege that they have stayed 90 days beyond the date they were ordered to leave the country. [Section 1 of H.B. 1704] applies to those who "refuse[] to depart" from Tennessee "within a period of ninety (90) days from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court." *Id.* § 1(a)(2). Plaintiffs generally state that they have final orders of removal. Dkt. 1 ¶¶ 8-9; Dkt.

6-1 ¶ 10; Dkt. 6-2 ¶ 8. But they do not allege or declare the date on which their orders became final or that they have stayed 90 days past that date.

(Doc. No. 25 at 20). Defendants argue additionally:

Plaintiffs failed to attach their final orders of removal or plead the necessary allegations, that if true, would show they fall with [Section 1 of H.B. 1704's] ambit. Although Plaintiffs might amend their complaint, or prove up the necessary facts through discovery, at this early juncture, Plaintiffs have not made "a clear showing" that they are covered by [Section 1 of H.B. 1704]. *L.W.*, 83 F.4th at 471.

(*Id.*). All told, the Court discerns that Defendants contend that Plaintiffs have neither pled nor—as required for a preliminary injunction to issue—evidentially made a clear showing that they are likely to suffer an injury-in-fact, because (according to Defendants) Plaintiffs have not shown that they have an intent to engage in conduct that is arguably proscribed by Section 1 of H.B. 1740. In particular, Defendants argue that Plaintiffs have not shown that Section 1 of H.B. 1740 arguably proscribes (or will proscribe) Plaintiffs' conduct, because Plaintiffs have not shown (1) that they are subject to a removal order by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a); (2) that they have *valid* and *outstanding* removal orders; and (3) that they have stayed or will stay 90 days beyond the date that they were ordered to leave the country. Notably, for Plaintiffs to lack standing, Defendants do not need to be correct on each of these three particular arguments; instead, Defendants need to be correct only on *one* of these particular arguments.[23]

In the Preliminary Injunction Reply (Doc. No. 40), Plaintiffs resist Defendants' arguments. In relevant part, Plaintiffs assert:

Both Lucy and Benjamin have valid final orders of removal, Lucy Decl. ¶ 7, Benjamin Decl. ¶¶ 5-6, and they intend to remain in Tennessee after the 90-day removal period—which elapsed long ago. Lucy Decl. ¶¶ 7, 11; Benjamin Decl. ¶¶ 2, 5, 7 9. "Thus, the express statutory language" of H.B. 1704 "clearly renders [the statute] applicable" to Plaintiffs and "provide[s] a basis for prosecution." *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987).

---

[23] And ultimately the Court need assess only, and thus below assesses only, the second of these three arguments.

Defendants suggest that Plaintiffs were not ordered removed as members of the classes described in 8 U.S.C. § 1227(a). Opp. 9 (Dkt. 25). That misunderstands the federal removal scheme, under which individuals are charged with either being "deportable" under § 1227(a) if they were previously admitted to the United States, or "inadmissible" under 8 U.S.C. § 1182 if they were not. *See Judulang v. Holder*, 565 U.S. 42, 46 (2011). Once a noncitizen has been "admitted" on a visa, they must be charged as deportable under § 1227(a) for a removal order to issue. Those who are admitted on visas and issued removal orders hence fall into one of the categories in § 1227(a). And the record clearly reflects that Lucy and Benjamin were admitted on visas and were later ordered removed. See Lucy Decl. ¶ 6; Benjamin Decl. ¶ 4.

Defendants question the validity of Plaintiffs' removal orders and suggest that they may fall within a (nonexistent) exemption to H.B. 1704. Opp. 9. Both claims are baseless. Plaintiffs were ordered removed years ago, Lucy Decl. ¶ 7, Benjamin Decl. ¶¶ 5-6, and Defendants provide no reason to doubt that the orders are valid. Defendants further speculate that the orders may not be "outstanding" because, at some point in the future, Plaintiffs might obtain relief, see Opp. 10 (noting that "Lucy is actively seeking cancellation of her order"). But this does not undermine Plaintiffs' standing to obtain preliminary relief now, and H.B. 1704 contains no defense to prosecution for individuals who are pursuing federal relief.

Finally, contrary to Defendants' assertion, Opp. 10, Plaintiffs have already remained in Tennessee 90 days beyond the date they were ordered removed. Lucy's removal order became final in 2005, yet she has lived in Tennessee for 25 years and will continue to do so. Lucy Decl. ¶¶ 7, 11-14. Benjamin was ordered removed as a teenager, is now 35 years old, and intends to stay in Tennessee to complete his training program. Benjamin Decl. ¶¶ 2, 5, 7-10.

(Doc. No. 40 at 2-3).

At base, a review of the briefing on the Preliminary Injunction Motion and a review of the record in this case shows that Plaintiffs have not shown that they have an intent to engage in conduct that is arguably proscribed by Section 1 of H.B. 1704, and thus Plaintiffs have failed to make a clear showing through evidence that they are likely to suffer an injury-in-fact. The Court so concludes because Plaintiffs have not shown evidentially (or even alleged) that they are in fact subject to removal orders that are both *valid* and *outstanding* as required for individuals to engage

in conduct proscribed by Section 1 of H.B. 1704.[24] The evidence in this action—in particular the

Declaration of Lucy (Doc. No. 6-1) and the Declaration Benjamin (Doc. No. 6-2), on which

Plaintiffs rely in their Preliminary Injunction Reply—does suggest that the Plaintiffs are subject to

*final* removal orders. (Doc. No. 6-1 at ¶¶ 7, 10; Doc. No. 6-2 at ¶ 8). However, and contrary to

Plaintiffs' assertions in the Preliminary Injunction Reply, there is no indication in either of these

declarations that Plaintiffs' removal orders are either valid[25] or outstanding.[26] Neither is there any

---

[24] The Court does not currently have a clear view as to what the terms "valid" and "outstanding" precisely mean for the purposes of Section 1 of H.B. 1704. Suffice it to say, the Court is convinced that the terms "valid" and "outstanding" are *not* synonymous with the term "final," as used in Section 1 of H.B. 1704. And the Court does not discern that there is any basis to simply assume that "valid" and "outstanding" are mere synonyms of "final" as used in Section 1 of H.B. 1704. The Court's conclusion here is consistent with the well-established canon of statutory construction that "In a given statute . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024).

With that said, and consistent with the Court's observations in the footnotes below—wherein the Court discusses the particular concepts of a "valid" and "outstanding" removal order under federal law—the Court is inclined to believe that the proper interpretation of these terms is one that matches the meaning of these terms under federal law. In any event it is Plaintiffs' job to address the meaning of these terms within Section 1 of H.B. 1704, and to demonstrate—commensurate with the applicable burden at a given stage of litigation—that they are subject to removal orders that are valid and outstanding within the meaning of Section 1 of H.B. 1704.

[25] The Court notes that, under federal law, an order of removal's *validity* is distinct from the order's *finality*. Indeed, while "[a]n immigration judge's removal order 'becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first,'" *United States v. Gonzalez-Pano*, No. 25-CR-20542, 2026 WL 1008524, at *2 (E.D. Mich. Apr. 14, 2026) (quoting 8 C.F.R. § 1003.39)), "the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies" as to an appeal of an order of removal so as to render that order final. *United States v. Palomar-Santiago*, 593 U.S. 321, 327 (2021). *See also Monsalvo v. Bondi*, 604 U.S. 712, 758-59 (2025) (noting that the Supreme Court has permitted aliens to challenge rulings that effect the "validity" of final orders of removal) (Barrett, J., dissenting). Put another way, even if Plaintiffs' removal orders are *final*, that does not mean that they are *valid*, and Plaintiffs have not met their burden to show that their removal orders are *valid*.

The Court discerns that it is certainly *possible* that Plaintiffs are subject to valid removal orders. But the Court will not simply assume—as the Court would have to, given the lack of evidence in the record that the removal orders are valid—that such is the case; Plaintiff should not rely on the Court to assume this, but rather should *show* it—particularly since Defendants have squarely raised the issue.

[26] With respect to whether an order of removal is outstanding under federal law, and as Defendants argue, "actions by both the federal government and immigrants themselves can remove the 'outstanding' status of a final order of removal." (Doc. No. 25 at 20). *See also United States v. Bahlouli*, 790 F. Supp. 3d 559, 563 (W.D. Tex. 2025) (finding it unclear whether a removal order was outstanding because an immigration judge withheld removal).

indication elsewhere in the already large record in this action (or for that matter in the Complaint's allegations) that the removal orders to which Plaintiffs are subject are valid and outstanding.[27]

Moreover, to the extent that Plaintiffs contend that the Court should assume that Plaintiffs' removal orders are valid and outstanding because (according to Plaintiffs) "Defendants provide no reason to doubt that the [removal] orders are valid" and (according to Plaintiffs) Defendants merely "speculate" that the orders may not be outstanding (Doc. No. 40 at 3), Plaintiffs misapprehend the applicable burden(s) at this (and indeed *every*) stage of litigation; it is the plaintiff's burden at every stage of litigation to establish standing. *See Schickel v. Dilger*, 925 F.3d 858, 866 (6th Cir. 2019) ("Plaintiffs bear the burden of establishing standing, and they must support each element []

---

Again, although the Court discerns that it is possible that Plaintiffs are subject to outstanding orders of removal, without any indication of this, the Court will not assume that this is the case but instead leaves it to Plaintiffs to *show* that this is the case.

[27] To the extent that Plaintiffs assert in their Class Certification Reply that portions of the discovery that the Court permitted the parties to engage in with respect to class certification (Doc. No. 22) supports the conclusion that Plaintiffs have shown they are subject to valid and outstanding removal orders (Doc. No. 45 at 3), such assertion is unavailing.

It is true that, in his deposition, Benjamin stated that his removal order is "valid," (Doc. No. 44 at 111), and that Plaintiffs produced—in response to Defendants' request to "Produce a copy of your final removal order and any documents demonstrating the order is valid, outstanding, and final" (Doc. No. 44 at 192, 200)—certain documents regarding Plaintiffs' removal orders (including what appear to be the removal orders themselves) (Doc. No. 44 at 210-239). But these passing and conclusory allusions to Plaintiffs' removal orders (potentially) being valid and outstanding are not supported by evidence in the record suggesting that these orders *actually are* valid and outstanding. Moreover, in their briefing on the Preliminary Injunction Motion and the Class Certification Motion, Plaintiffs have failed to provide any persuasive argument as to why these passing and conclusory allusions to Plaintiffs' removal orders (potentially) being valid and outstanding show that the removal orders in fact are valid and outstanding.

What's more—and consistent with the Court's discussion above—these passing allusions to Plaintiffs' removal orders being valid and outstanding are not prefaced by factual matter alleged in the Complaint that asserts that Plaintiffs' removal orders are valid or outstanding; mere factual allegations in the Complaint would not have helped Plaintiffs meet their burden as movants for a preliminary injunction in any event, but they would have helped Plaintiffs avoid *sua sponte* dismissal of this entire action. But no such allegations were made.

Put another way, the discovery in which the parties engaged with respect to class certification neither warrants the Court concluding that Plaintiffs have shown they are subject to valid and outstanding removal orders, nor does anything to convince the Court to depart from its ultimate decision to deny the Preliminary Injunction Motion and dismiss this action without prejudice.

'with the manner and degree of evidence required at successive stages of the litigation.'" (quoting *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014))). And specifically when seeking a preliminary injunction, it is a plaintiff's burden to make a clear showing that she is likely to establish each element of standing through *evidence*. *See Moms for Liberty*, 155 F.4th at 509 (noting that a "plaintiff must make a 'clear showing' through *evidence* that she is 'likely' to establish each element of standing" for a preliminary injunction to issue (cleaned up) (emphasis added)).[28]

At base, Plaintiffs have failed to present evidence (or even allegations) to show that they are subject to valid and outstanding removal orders so as to demonstrate that their planned conduct is arguably proscribed by Section 1 of H.B. 1704. It follows that Plaintiffs have failed to show that they have an intent to engage in conduct that is arguably proscribed by Section 1 of H.B. 1740. Given that failure, Plaintiffs have not shown that they have suffered an injury-in-fact. In other words, Plaintiffs have not made a clear showing through *evidence* that they are likely to establish each element of standing. Accordingly, the Preliminary Injunction Motion (Doc. No. 6) can be and will be **DENIED** on this basis.[29]

---

[28]By contrast, at the pleading stage (as the Court has already explained in a footnote above), a plaintiff has the burden to "plausibly assert [the elements of] standing." *Christian Healthcare*, 117 F.4th at 842.

[29] Given the Court's denial of the Preliminary Injunction Motion on the grounds elucidated just above, the Court declines to reach Defendants' other arguments made as to Plaintiffs' lack of standing—namely that (1) Plaintiffs have failed to show an injury-in-fact (by failing to show an intent to engage in conduct arguably proscribed by Section 1 of H.B. 1704) specifically because (according to Defendants) Plaintiffs have not shown that they are subject to a removal by reason of membership in one of the classes described in 8 U.S.C. § 1227(a) and because (according to Defendants) Plaintiffs have not otherwise shown that they have stayed or will stay in Tennessee 90 days beyond the date that they were ordered to leave the country; (2) Plaintiffs have not shown a credible threat of enforcement of Section 1 of H.B. 1704; and (3) Plaintiffs' injuries (to the extent they have any) are not traceable to General Skrmetti (thus defeating standing as to General Skrmetti in particular).

### 2. Dismissal of this Action

As discussed above, in addition to failing to make a showing through *evidence* that Plaintiffs are subject to removal orders that are both valid and outstanding, Plaintiffs have also failed to *allege* that they are subject to valid and outstanding removal orders. This naturally raises the question of whether Plaintiffs have adequately alleged standing in the Complaint so as to avoid dismissal of this action for lack of subject-matter jurisdiction. The Court will analyze this issue below; in so doing, it will begin by expanding on (and to an extent repeating) observations made in a footnote above regarding the standards for *dismissing* an action for lack of standing, the circumstances in which it is appropriate for a court to *sua sponte*[30] dismiss an action for lack of standing, and the standards for dismissing an action for lack of standing on a *sua* sponte basis in particular.

Standing is "an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)," and motions to dismiss for lack of standing are made under Rule 12(b)(1). *Lyshe*, 854 F.3d at 857. *See also Kepley*, 715 F.3d at 972 (Standing "goes to [a c]ourt's subject matter jurisdiction"); *Allstate Ins. Co.*, 520 F. App'x at 410-11 ("Although the parties and the district court considered the issue of standing as a failure to state a claim under Rule 12(b)(6), it is more properly considered an attack on the court's subject-matter jurisdiction under Rule 12(b)(1).").

Like any kind of challenge to subject-matter jurisdiction, a challenge specifically to the plaintiff's standing can be in the form of either a facial attack or a factual attack. *See Procollect,*

---

[30] The Court notes that although it is raising the prospect of *dismissal* of this action for lack of standing *sua sponte* (inasmuch as Defendants have not yet moved to dismiss this action), the deficiency of Plaintiffs' allegations with respect to standing is not being raised in the first instance by the Court but rather was already raised by Defendants in both the Preliminary Injunction Response and the Class Certification Response.

*Inc.*, 547 F. Supp. 3d at 796 ("Challenges to standing can be facial or factual."); *In re Saffold*, 373 B.R. at 43 ("A challenge to standing may be either a facial attack on a pleading or a factual attack."). "A facial attack on standing challenges the legal sufficiency of the complaint, whereas a factual challenge against standing questions whether the complaint's factual assertions reflect reality." *Shumway*, 570 F. Supp. 3d at 588. "When there is a facial challenge to standing, the court must regard all [factual] allegations in the complaint as true." *Id.* And so, "[w]hen analyzing a facial attack, the court must accept the plaintiff's [factual] allegations regarding standing as true and determine whether the plaintiff has asserted a plausible claim that it has standing." *Ctr. for Biological Diversity*, 2022 WL 4137824, at \*2. However, when a court considers a factual attack on a complaint, "no presumptive truthfulness applies to the factual allegations." *Ohio Nat. Life Ins.*, 922 F.2d at 325. Instead, "the district court must [] weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist[] [and] a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

Aside from the particular types of challenges that a party may bring with respect to standing, the Court may, as is well-established, *sua sponte* dismiss an action for lack of standing. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Belock*, 19 F. App'x at 324 ("*Sua sponte* dismissal is proper in a case in which the district court clearly lacks jurisdiction."); *In re O'Donnell*, 326 B.R. 901 ("A trial court, or any appellate court, may *sua sponte* deny any claim for lack of standing of the party attempting to bring the claim."). Although the principle that a court may dismiss an action *sua sponte* for lack of standing is frequently stated, the standard that a court must apply in considering whether to *sua sponte* dismiss an action for lack of standing is less frequently

articulated. When district courts do articulate a standard for a dismissal of an action in these circumstances, district courts have generally stated that dismissal is appropriate where the "plaintiff fails to allege sufficient facts demonstrating each element of Article III standing." *Abraham Considine Living Est. Tr. v. Unknown Party*, No. CV-25-00716-TUC-JGZ, 2026 WL 540417, at *1 (D. Ariz. Feb. 26, 2026) (citing *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)). *See also Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1286 (N.D. Ala. 2014) (noting if "allegations are not sufficient to plausibly establish standing, then the Court may dismiss the complaint *sua sponte* for lack of subject matter jurisdiction"). Put another way, when considering whether to dismiss a complaint *sua sponte* for lack of standing, the district court will examine whether a plaintiff has pleaded factual matter plausibly "establishing each of the three elements for standing." *Love v. Benson*, No. 25-CV-13105, 2026 WL 915492, at *1 (E.D. Mich. Mar. 4, 2026) (citing *Spokeo*, 578 U.S. at 338), *report and recommendation adopted*, No. 25-13105, 2026 WL 915464 (E.D. Mich. Apr. 2, 2026). And if a plaintiff has not pleaded factual matter plausibly establishing standing, the complaint is subject to dismissal *sua sponte* by the district court for lack of standing. This standard only makes sense when considering that a "plaintiff's burden at the pleading stage is to plausibly assert standing." *Christian Healthcare*, 117 F.4th at 842 (citing *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021)).

Thus, the upshot seems to be that when considering whether to dismiss a complaint *sua sponte* for a plaintiff's lack of standing, the district court is in effect evaluating the complaint through the lens of a facial challenge to the court's subject-matter jurisdiction, insofar as the district court accepts the factual allegations in the complaint as true, and merely considers whether these allegations plausibly establish the three elements of standing. *Cf. Wiater v. Stellantis, N.V.*, No.

23-11408, 2024 WL 4339983 (E.D. Mich. Sept. 27, 2024) (*sua sponte* dismissing claims for lack of standing based on insufficiency of complaint's allegations).

With this standard in mind, the Court will now turn to the Complaint. The Court will not repeat in detail the legal standards applicable to standing in a pre-enforcement suit. However, it bears emphasis that to establish Article III standing at the pleading stage—so as to avoid dismissal of a complaint for lack of standing—a plaintiff must plausibly allege (rather than make an evidentiary showing on)[31] the three elements of standing, which are injury-in-fact, traceability, and redressability. *Christian Healthcare*, 117 F.4th at 842; *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 620 (6th Cir. 2008) (Moore, J., dissenting). So, at the pleading stage, to establish injury-in-fact in a pre-enforcement action challenging a statute, a plaintiff must *plausibly allege*, among other things, that he or she has an intent to engage in conduct that is proscribed by the challenged statute. *Christian Healthcare*, 117 F.4th at 842 (noting when considering appeal of dismissal for lack of standing that a plaintiff must "plausibly allege[]" that they intend to engage in conduct that is proscribed by the challenged statute). Further, and consistent with the Court's earlier discussion, to plausibly allege that she has an intent to engage in conduct that is proscribed by the statute, a plaintiff must allege that her intended conduct meets all elements of the challenged statute. *Friends of George's, Inc.*, 108 F.4th at 436.

Here, as noted above, although Plaintiffs have adequately alleged that they are subject to removal orders and that those removal orders are final, (Doc. No. 1 at ¶¶ 8-9), they have not asserted anywhere in the Complaint (even in wholly conclusory fashion) that those orders are *valid*

---

[31] By contrast, an evidentiary showing *is* required to establish a likelihood of standing for purposes of seeking a preliminary injunction. Accordingly, when considering standing in the context of the Preliminary Injunction Motion, the Court was considering whether Plaintiffs had made a clear showing through evidence that they were likely to establish all elements of standing.

and *outstanding* within the meaning of Section 1 of H.B. 1704.[32] Still less have Plaintiffs alleged any *factual matter* plausibly supporting the legal conclusion that their removal orders qualify as valid and outstanding within the meaning of Section 1 of H.B. 1704.

This is crucial because—as this Court has stated elsewhere—Section 1 of H.B. 1704 imposes criminal penalties on an individual only if that individual (1) is an alien, (2), is 18 years of age or older, (3) is subject to a valid, final and outstanding removal order on the basis of that individual being a member of any of the classes described in 8 U.S.C. § 1227(a), and (4) has failed or refused to leave the state of Tennessee within the 90-day window.

Because they have failed to allege that they are subject to removal orders that are valid and outstanding, Plaintiffs have not plausibly suggested that their intended conduct is arguably proscribed by Section 1 of H.B. 1704. Thus, Plaintiffs have failed to plausibly allege injury-in-fact and have thus failed to plausibly allege standing. *Friends of George's*, 108 F.4th at 438 (observing where a plaintiff failed to show an intention to violate the challenged statute that it "cannot show a pre-enforcement injury" and so "lacks standing").

It bears emphasis that a lack of standing is no mere technicality. *See United States v. Lorantffy Care Ctr.*, 999 F. Supp. 1037, 1042 (N.D. Ohio 1998) ("Standing is not a mere technicality or procedural hurdle. It is a basic question of constitutional law."). And it is certainly not something that the Court is free to disregard in furtherance of some purportedly higher-priority

---

[32] As noted in the footnote above, the Court does not currently have a clear view as to precisely what the terms "valid" and "outstanding" mean as used in Section 1 of H.B. 1704. Consistent with the Court's observations in the footnotes above—where the Court discussed the particular concepts of a "valid" and "outstanding" removal order under federal law—the Court is inclined to believe that the proper interpretation of these terms is one that matches the meaning of these terms under federal law. In any event—and as also noted in the footnote above—it is Plaintiffs' job to address the meaning of these terms within Section 1 of H.B. 1704, and to demonstrate—commensurate with the applicable burden at a given stage of litigation—that they are subject to removal orders that are valid and outstanding within the meaning of Section 1 of H.B. 1704.

objective of reaching more promptly the substantive merits of a claim that Plaintiffs insist is time-sensitive (generally and with respect to themselves in particular). This principle applies not least to a lawsuit that in actuality is more attorney-driven rather than client-driven. *Cf. In re Bank of New York Derivative Litig.*, 173 F. Supp. 2d 193, 194 (S.D.N.Y. 2001) (stating in shareholder derivative action that "[t]he existence of a proper client—a plaintiff with standing to sue—is not a mere technicality."), *aff'd*, 320 F.3d 291 (2d Cir. 2003).[33] As one court put it very recently, "[S]tanding requirements are not mere technicalities, or methods of evading review. They are critical safeguards to the integrity of our constitutional order . . . ." *Walsh v. Luzerne Cnty.*, No. 4:24-CV-01878, 2025 WL 1222745, at *9 (M.D. Pa. Apr. 28, 2025). Plaintiffs act at their peril when they do not ensure that they have set forth factual matter plausibly suggesting satisfaction of all requirements for standing.[34]

Given Plaintiffs' failure to plausibly allege standing, the Court will *sua sponte* dismiss this action for lack of subject-matter jurisdiction. *See e.g., Love*, 2026 WL 915492, at *1 (noting that a plaintiff bears the burden at the pleadings stage of "establishing each of the three elements for standing."); *Abraham*, 2026 WL 540417, at *1 ("a district court may dismiss a complaint *sua sponte* if the plaintiff fails to allege sufficient facts demonstrating each element of Article III standing."). *Burton*, 47 F. Supp. 3d at 1286 (noting if "allegations are not sufficient to plausibly

---

[33] The Court does not mean to say that the instant suit is more attorney-driven than client-driven; the Court is in no position to know whether that is the case. The point is that whoever is the plaintiff in a counseled case must have standing, and that it is not enough that someone else may have standing and that if counsel represented that person then counsel could gain traction in the litigation.

[34] Plaintiffs also act at their peril when—in the face of a direct challenge to their standing—they do not file an amended complaint as of right under Rule 15 that would have resolved the standing deficiency. This option seemingly was available to Plaintiffs here *if*, consistent with Rule 11, they could have asserted in an amended complaint factual matter that would have plausibly suggested that their removal orders were valid and outstanding within the meaning of H.B. 1704. But Plaintiffs did not take this tack, for reasons unknown to the Court and which the Court does not presume to second-guess.

establish standing, then the Court may dismiss the complaint *sua sponte* for lack of subject matter jurisdiction"). Given that the dismissal of this action is for lack of subject-matter jurisdiction, the dismissal will be without prejudice. *Roberts v. Progressive Preferred Ins. Co.*, 167 F.4th 955, 964 (6th Cir. 2026) ("when a court dismisses for lack of subject-matter jurisdiction, it must generally do so without prejudice."); *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) ("our court has stated on several occasions that dismissal for lack of subject matter jurisdiction should normally be without prejudice.").[35] [36]

---

[35] Notably, the "Court [generally] cannot [] *sua sponte* dismiss a claim for failure to state a claim without first giving Plaintiff notice and an opportunity to amend." *Lloyd v. Pokorny*, No. 2:20-CV-2928, 2020 WL 4455547, at *12 n.16 (S.D. Ohio Aug. 3, 2020) (citing *Gooden v. City of Memphis*, 29 F. App'x 350, 352 (6th Cir. 2002)). However, given that the dismissal of this action is not for failure to state a claim, but instead for lack of subject-matter jurisdiction (based on Plaintiffs' lack of standing) and given that this dismissal is without prejudice, the Court does not discern that it is required to give Plaintiffs in this action opportunity to amend their Complaint prior to dismissing this action. And indeed, district courts in this circuit have noted that "courts need not always give parties notice [] before *sua sponte* dismissing a claim for lack of subject matter jurisdiction." *Zettel v. Service Financial Co.*, No. 3:23-CV-116-RGJ, 2024 WL 1722184, at *2 (W.D. Ky. Apr. 22, 2024). *See also McCormick v. Hanover Ins. Grp., Inc.*, No. 06-11719, 2006 WL 3289785, at *2 (E.D. Mich. Nov. 13, 2006) (noting that a "district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction" and can properly do so "without notice to the parties."). In fact, district courts in this circuit frequently dismiss actions or claims *sua sponte* for lack of subject-matter jurisdiction without notice or opportunity to amend a complaint. *See Nice v. City of Akron*, No. 5:18-CV-1565, 2020 WL 3000474, at *1-2 (N.D. Ohio June 4, 2020) (dismissing action *sua sponte* for lack of subject-matter jurisdiction without seeming to give plaintiffs notice or leave to amend); *Accord v. Anderson Cnty., Tennessee*, No. 3:21-CV-00077, 2021 WL 6135691, at *6 (M.D. Tenn. Dec. 28, 2021) (dismissing certain claims without prejudice for lack of subject-matter jurisdiction *sua sponte* and without notice or leave to amend).

The Court also notes, consistent with a footnote above, that arguably Plaintiffs *did* have notice and opportunity to amend their Complaint to address the Complaint's deficiencies with respect to standing, given that these deficiencies were raised in Defendants' Preliminary Injunction Response (filed on June 15, 2026) and Class Certification Response (filed on June 22, 2026), and yet Plaintiffs declined to amend the Complaint in response despite being entitled to do as of right under Rule 15.

[36] One additional point bears mentioning even though it almost goes without saying, given the Court's denial of the Preliminary Injunction Motion and the Court's dismissal of this action. The Court's aforementioned conclusions reflect neither a view as to the ultimate merits of a challenge (based on preemption) to Section 1 of H.B. 1704, nor the view that no future plaintiff could establish standing in a pre-enforcement challenge to Section 1 of H.B. 1704. Still less do these conclusions reflect any policy views concerning immigration generally, enforcement of this country's immigration laws, or immigration-enforcement officials; indeed, a judge's policy views on such matters are utterly irrelevant to the issues addressed herein and also to the issues that would be addressed in any decision reaching the merits of the kind of challenge Plaintiffs sought to make in this case. The Court's aforementioned conclusions merely

### 3. Remaining Motions

Even though the Court has elected to dismiss this action *sua sponte* for lack of subject-matter jurisdiction (based on Plaintiffs' lack of standing), there are still a handful of motions the Court should address. First (and most easily resolved) is the Class Certification Motion (Doc. No. 7). Given that the Court is dismissing this action for lack of subject-matter jurisdiction, the Class Certification Motion (Doc. No. 7) will be **DENIED** as moot.

That still leaves the Motions to Seal (Doc. Nos. 33, 43) and the Pseudonym Motion (Doc. No. 8). The Court will address these motions below.

#### a. The Motions to Seal

As noted above, via the First Motion to Seal (Doc. No. 33) Defendants seek leave to file under seal Defendants' Sealed Exhibit (Doc. No. 34), which was filed in support of Defendants' Class Certification Response. Further, via the Second Motion to Seal (Doc. No. 43) Plaintiffs seek leave to file under seal Plaintiffs' Sealed Exhibit (Doc. No. 44), which was filed in connection with the Class Certification Reply. Here, the Motions to Seal are subject to denial for procedural non-compliance with Local Rule 5.03(e).

Local Rule 5.03(e) provides:

> If practicable, the party requesting that some or all of a filing be sealed must also separately file a redacted version. If the filing of a redacted version is impracticable, the motion to seal must include an affirmative statement to that effect.

Here, in connection with the First Motion to Seal, Defendants did not file a proposed redacted version of Defendants' Sealed Exhibit, and Defendants' First Motion to Seal nowhere provides an affirmative statement as to why the "filing of a redacted version" of Defendants' Sealed Exhibit for public accessibility "is impracticable." Local Rule 5.03(e). To comply with the

---

reflect what the Court views as deficiencies in the record and in Plaintiff's allegations regarding the standing of these Plaintiffs to challenge Section 1 of H.B. 1704.

Local Rules, one or the other of these options must be taken by the filer, so the first Motion to Seal is noncompliant with the Local Rules. Likewise, Plaintiffs, in connection with the Second Motion to Seal, did not file a proposed redacted version of Plaintiffs' Sealed Exhibit, and Plaintiffs' Second Motion to Seal nowhere provides an affirmative statement as to why the "filing of a redacted version" of Plaintiffs' Sealed Exhibit for public accessibility "is impracticable." Local Rule 5.03(e). And so the Second Motion to Seal is also noncompliant with the Local Rules.

Accordingly, the Motions to Seal (Doc. Nos. 33, 43) will be **DENIED** for noncompliance with the Local Rules—specifically Local Rule 5.03(e). Such denial is without prejudice to any of parties filing renewed (procedurally compliant) motions to place Defendants' Sealed Exhibit and Plaintiffs' Sealed Exhibit under seal within twenty-one (21) days of the issuance of this Memorandum Opinion.[37] Given that in the First Motion to Seal Defendants indicated that they "take no position on whether" Defendants' Sealed Exhibit warrants sealing and stated that they filed the First Motion to Seal to comply with the temporary protective order in this matter (Doc. No. 33 at 1), the Court would look favorably on Plaintiffs moving in a single motion to place both Defendants' Sealed Exhibit and Plaintiffs' Sealed Exhibit under seal.[38]

---

[37] Although the Court will deny the Motions to Seal, the Court will leave Defendants' Sealed Exhibit and Plaintiffs' Sealed Exhibit under seal for the next twenty-one (21) days to permit any of the parties to file renewed motions to place Defendants' Sealed Exhibit and Plaintiffs' Sealed Exhibit under seal.

[38] The Court notes that it is well-established that the mere fact that documents are subject to a protective order does not mean that their sealing would be justified, and that counsel needs to explain why sealing is appropriate under prevailing Sixth Circuit standards when filing a motion to seal. *See, e.g.*, *Hughes v. Core Civic, Inc.*, No. 3:19-CV-924, 2021 WL 5827136, at *1 (M.D. Tenn. Dec. 8, 2021) (noting that a document being "designated 'confidential' pursuant to a protective order is insufficient basis to support sealing"), *report and recommendation adopted*, 2021 WL 2411342 (M.D. Tenn. June 11, 2021). *Cf. Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) (noting that a "confidentiality agreement between the parties does not bind the court in any way" in deciding whether to seal documents).

b. <u>The Pseudonym Motion</u>

That takes the Court to the Pseudonym Motion (Doc. No. 8). As noted above, via the Pseudonym Motion Plaintiffs "seek leave to proceed pseudonymously, under the following pseudonyms: Lucy and Benjamin." (Doc. No. 8 at 2). Via a joint notice (Doc. No. 28, "Notice"), the parties have informed the Court that "Defendants no longer oppose" the Pseudonym Motion. (Doc. No. 28 at 1).

As a general matter, a complaint must name all parties. *See Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). The court may allow plaintiffs to proceed under a pseudonym where the plaintiffs show that their "privacy interests substantially outweigh the presumption of open judicial proceedings." *Id.* In determining whether plaintiffs have met this burden, courts in the Sixth Circuit consider the following factors (which are known as the *Porter* factors): "(1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children." *Id.* (internal quotation marks omitted). "A plaintiff does not have to fulfill every *Porter* factor to be allowed to proceed under a pseudonym, and no one *Porter* factor is dispositive in the outcome of such a decision." *Doe v. Sumner Cnty. Bd. of Educ.*, No. 23-cv-00498, 2025 WL 3896598, at *2 (M.D. Tenn. June 2, 2025). The *Porter* factors are not exhaustive; in determining whether a plaintiff should be allowed to proceed under a pseudonym in a pending lawsuit, courts can consider other relevant factors as put forth by the parties, *Doe v. Metro. Gov't of Nashville & Davidson Cnty. Tennessee*, Civ. No. 3-21-CV-00038, 2022 WL 2293898, at *2, *4 (M.D. Tenn. June 24, 2022) (explaining that the *Porter* factors are non-exhaustive), such as whether defendant(s) would be prejudiced by permitting

plaintiff(s) to proceed pseudonymously, *Doe v. Fedex Ground Package Sys., Inc.*, Case No. 3:21-cv-00395, 2021 WL 5041286, at *5 (M.D. Tenn. Oct. 29, 2021), and whether the "party's need for anonymity outweighs [] the public interest in knowing the party's identity." *K.S. v. Detroit Public Schs.*, No. 14-12214, 2015 WL 13358204, at *3 (E.D. Mich. July 22, 2015) (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)).

Here, application of the relevant factors shows that granting the Pseudonym Motion is warranted. Specifically, in this case Plaintiffs are "suing to challenge governmental activity"—i.e., they are suing to enjoin enforcement of Section 1 of H.B. 1704, which is a Tennessee state criminal statute. Moreover, the Court cannot identify, and Defendants do not advance, any prejudice that Defendants would suffer as a result of Plaintiffs being permitted to proceed pseudonymously in bringing this action. Additionally, given that the Court is dismissing this action, the Court does not discern that there is any interest in the public knowing Plaintiffs' identities in this action that would outweigh Plaintiffs' own interests in anonymity.

Accordingly, the Pseudonym Motion (Doc. No. 8), being both unopposed and substantively meritorious, will be **GRANTED**. Therefore, Plaintiffs shall be permitted to proceed in this action under their requested pseudonyms: Lucy and Benjamin—although, given that this action is being dismissed, the real consequence of this decision is that Plaintiffs' identities will remain undisclosed even after the dismissal of this action (and the attendant closure of the file by the Clerk).

CONCLUSION

For the reasons stated herein, the Preliminary Injunction Motion (Doc. No. 6) will be **DENIED**, the Class Certification Motion (Doc. No. 7) will be **DENIED** as moot, the Pseudonym Motion (Doc. No. 8) will be **GRANTED**, the First Motion to Seal (Doc. No. 33) will be **DENIED**,

and the Second Motion to Seal (Doc. No. 43) will be **DENIED**. Finally, this action will be **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

An appropriate corresponding order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE